MICHIGAN NATIONAL BANK v. FLOWERS MOBILE HOMES SALES, INC., AND ARMOR MOBILE HOMES MANUFACTURING CORPORATION OF GEORGIA

No. 758SC171

(Filed 6 August 1975)

1. Uniform Commercial Code § 74— sale of secured property — identifiable proceeds — continuance of security interest

G.S. 25-9-306(2) provides that when property subject to a security interest is sold by the debtor, the security interest continues in any identifiable proceeds including collections received by the debtor.

Bank v. Mobile Homes Sales

2. Uniform Commercial Code § 74— security interest in mobile home — sale — proceeds deposited in bank — interest in checking account

Where plaintiff obtained a valid security interest in $6400 which defendant received from the sale of a mobile home at the time defendant first collected that amount from its customer, the proceeds of the sale remained "identifiable proceeds" so as to be subject to plaintiff's security interest after they were deposited in defendant's regular checking account.

APPEAL by plaintiff from *Cowper, Judge.* Judgment entered 2 November 1974 in Superior Court, LENOIR County. Heard in the Court of Appeals 6 May 1975.

This is a civil action heard by the court without a jury upon stipulated facts and documentary evidence.

On 1 July 1967 plaintiff, Michigan National Bank, and the defendant, Flowers Mobile Homes Sales, Inc., entered into a "Security Agreement (Dealer's Floor Plan)" by which Flowers granted to the Bank a continuing security interest in all of Flowers's inventory, which consisted primarily of mobile homes, and in the proceeds thereof. By this agreement Flowers was authorized to make sales at retail from its inventory in the ordinary course of its business, and Flowers agreed that upon making any such sales it would, within 24 hours thereafter, pay to the Bank for application on any obligation which it owed to the Bank, whether or not then due, an amount at least equal to the value of the inventory sold as contained in schedules agreed to in writing by the Bank. A U.C.C. Financing Statement dated 3 July 1967 was entered into between plaintiff Bank and defendant Flowers, which statement was filed on 3 July 1967 both with the Register of Deeds of Lenoir County, where Flowers had its principal office, and with the Secretary of State of North Carolina. This financing statement covered:

> "House trailers, trailer coaches, trailer equipment and furnishings, or the like, including all products and proceeds thereof, whether in the form of tradeins, cash, chattel paper or the like."

The box on the statement indicating "Proceeds of collateral are also covered" was checked.

On 10 August 1970 Flowers executed a "U.C.C. Floor Plan Promissory Note" payable to the order of the Bank in the amount of $5,727.13 for a 1970 Madison Mobile Home, Serial No. 1629. This note was payable 90 days after date or, at payee's or hold-

er's option, on demand. Plaintiff Bank was the payee and holder of this note. On 18 September 1970 Flowers sold the mobile home referred to in this note to a retail customer for $6,400.00, which it deposited on that date into its regular checking account No. 7-027-845 in Wachovia Bank and Trust Company. On 16 October 1970 Flowers issued its check to plaintiff drawn on this bank account in the amount of $5,607.00 as discounted payment for the above-mentioned "U.C.C. Floor Plan Promissory Note" dated 10 August 1970. This check was presented for payment by plaintiff to Wachovia on 29 October 1970, but was not honored for payment because the account had then been attached under execution issued on a judgment obtained by the defendant, Armor Mobile Homes Manufacturing Corporation of Georgia.

On 23 September 1970 Armor obtained a judgment by default against Flowers in the amount of $20,416.60, and on 21 October 1970 execution was issued on this judgment pursuant to which the Sheriff of Lenoir County on 27 October 1970 levied upon Flowers's bank account No. 7-027-845 in Wachovia. As a result of this execution and levy, the balance on deposit in said account as of 31 October 1970, in the amount of $7,429.90, was paid to the Sheriff who, in turn, delivered said funds to Armor.

Account No. 7-027-845 was used by Flowers as a regular general checking account to pay various obligations, including payments on Floor Plan Promissory Notes executed to plaintiff, payments on notes to Wachovia, salaries to officers of Flowers, salaries and commissions to sales personnel, taxes, insurance, payments to finance companies pursuant to financing arrangements with customers who had bought mobile homes, payments to manufacturers of mobile homes such as Armor, and other miscellaneous expenses. Flowers made deposits to said account from proceeds of sales made by it, payments by customers on dealer financing arrangements made with customers, and from other sources.

Plaintiff commenced this action on 7 September 1971 against both Flowers and Armor seeking recovery in the amount of $5,607.00. When the case was called for trial, Flowers would not waive a jury trial and plaintiff filed a voluntary dismissal without prejudice as to Flowers pursuant to Rule 41 (a). Plaintiff Bank and defendant Armor waived trial by jury and filed a stipulation of facts. After considering the stipulated facts and considering documentary evidence introduced by both parties,

the court entered judgment making findings of fact and concluding as a matter of law that the proceeds of the sale of the mobile home "were so co-mingled [sic] as to lose their identity as proceeds from the sale of secured personal property." Accordingly, the court adjudged that plaintiff recover nothing against Armor and that its action against Armor be dismissed with prejudice. From this judgment plaintiff appealed.

*Perry, Perry & Perry by Warren S. Perry for plaintiff appellant.*

*White, Allen, Hooten & Hines, P.A. by Thomas White III for defendant, Armor Mobile Homes Manufacturing Corporation, appellee.*

PARKER, Judge.

[1, 2] G.S. 25-9-306(2) provides that when property subject to a security interest is sold by the debtor, the security interest "continues in any identifiable proceeds including collections received by the debtor." Under this statutory provision there can be no question but that plaintiff obtained a valid security interest in the $6,400.00 which Flowers received from the sale of the Madison Mobile Home at the time Flowers first collected that amount from its customer. The question presented by this appeal is whether the proceeds of that sale remained "identifiable proceeds" so as to be subject to plaintiff's security interest after they were deposited in Flowers's regular checking account. We hold that they did.

Under G.S. 25-9-306(3), if the security interest in the original collateral was perfected and the filed financing statement covering the original collateral also covers proceeds, as is true in the present case, the security interest in the proceeds is a "continuously perfected security interest." And under G.S. 25-9-205 "[a] security interest is not invalid or fraudulent against creditors by reason of liberty in the debtor to use, commingle or dispose of all or part of the collateral . . . or to use, commingle or dispose of proceeds, or by reason of the failure of the secured party to require the debtor to account for proceeds or replace collateral." Although neither of these statutory provisions speaks directly to the problem with which we are here concerned, they do indicate strongly the spirit in which the Uniform Commercial Code is to be applied.

While we have found no statutory definition of "identifiable proceeds" as that term is used in G.S. 25-9-306(2), we also find no express limitation on the right of a secured party to trace proceeds subject to his security interest into a bank account of the debtor. This lack of limitation is not without significance. The U.C.C. provides that "[u]nless displaced by the particular provisions of this chapter, the principles of law and equity . . . shall supplement its provisions." G.S. 25-1-103. One such principle, which by analogy has application to the present case, is the doctrine of trust pursuit under which a cestui que trust is enabled to follow the trust funds through changes in their state and form in the hands of the trustee. *Trust Co. v. Barrett*, 238 N.C. 579, 78 S.E. 2d 730 (1953); *see* 7 Strong, N. C. Index 2d, Trusts, § 21. From application of this doctrine in cases throughout this country there has evolved the general rule that the act of a trustee in mingling trust funds in a mixed bank account will not destroy their identity so as to prevent their reclamation. *See* Annot., 102 A.L.R. 372 (1936) (Supplementing annotations in 26 A.L.R. 3 (1923); 35 A.L.R. 747 (1925); and 55 A.L.R. 1275 (1928); D. Dobbs, Handbook on the Law of Remedies, § 5.16 at 427-28 (1973). Although the relationship between a secured party and his debtor is certainly not identical with that between a cestui que trust and his trustee, in each case the problem of tracing and identifying funds is sufficiently similar so that at least some of the tracing rules developed in the context of one relationship have logical application in the other. Under the basic tracing rule developed in the trust situation, it is presumed that any withdrawals made by the trustee for his own purposes form the mixed account subsequent to the deposit of the trust funds are made from the personal moneys of the trustee, and the funds being traced are presumed to remain idle in the bank account.

The record of Flowers's account No. 7-027-845 in Wachovia for the period from 18 September 1970, when the $6,400.00 proceeds from the sale of the Madison Mobile Home were deposited, until 31 October 1970, when the balance in the account was paid over to the Sheriff, which was introduced as an exhibit in this case, discloses a number of deposits and a large number of withdrawals. However, at all times during that period there remained in the account a balance of more than the $5,607.00 on which plaintiff now claims a security interest. Indeed, the balance in the account during that period at all times exceeded the $6,400.00 proceeds from the sale of the original collateral.

Applying the standard tracing rule, the proceeds from the sale of the original collateral would thus be "identifiable," because it is presumed that they remained untouched in the bank from the day of their deposit to the day the checking account was seized. The proceeds in the account thus remained subject to plaintiff's security interest.

It may be conceded that had plaintiff required its debtor, Flowers, to maintain a separate bank account into which there should be deposited only the proceeds of sale of items of original collateral and from which no withdrawals could be made until plaintiff's security interest should be satisfied, and had plaintiff further adequately policed Flowers's handling of such an account, the problem of tracing "identifiable proceeds" would have been greatly simplified. Such cumbersome formalities, however, seem hardly compatible with the stated underlying purpose of the Uniform Commercial Code "to simplify . . . the law governing commercial transactions" and "to permit the continued expansion of commercial practices through custom, usage and agreement of the parties." G.S. 25-1-102(2).

Our decision here is supported by the opinions in *Brown & Williamson T. Corp. v. First Nat. Bk. of Blue Island,* 504 F. 2d 998 (7th Cir. 1974); *Universal C.I.T. Credit Corp. v. Farmers Bank of P.,* 358 F. Supp. 317 (E.D. Mo. 1973); *Associates Discount Corp. v. Fidelity Union Trust Co.,* 111 N.J. Super. 353, 268 A. 2d 330 (1970); *Girard Trust Corn Exchange Bank v. Warren Lepley Ford, Inc.,* 25 Pa. D. & C. 2d 395, 1 U.C.C. Rep. Serv. 531 (Pa. Ct. C.P. 1958).

G.S. 25-9-306(4), referred to in the briefs of the parties, is not here applicable. That section applies "[i]n the event of insolvency proceedings instituted by or against a debtor," and so far as the record before us discloses no such insolvency proceedings have been instituted by or against the debtor in this case.

The judgment appealed from is reversed and this case is remanded for entry of judgment consistent herewith.

Reversed and remanded.

Judges BRITT and VAUGHN concur.