**ANDERSON, CLAYTON & CO., a corporation, d/b/a Acco Feeds, Appellant,**

v.

**FIRST AMERICAN BANK OF ERICK, Oklahoma, a state banking institution, Appellee.**

**ANDERSON, CLAYTON & CO., a corporation, d/b/a Acco Feeds, Appellee,**

v.

**FIRST AMERICAN BANK OF ERICK, Oklahoma, a state banking institution, Appellant.**

**Nos. 51246, 51465.**

Supreme Court of Oklahoma.

May 13, 1980.

As Corrected May 16 and 20, 1980.

**1092**

McAfee, Taft, Mark, Bond, Rucks & Woodruff by John N. Hermes, Oklahoma City, for appellant.

Hastie & Kirschner by Michael Paul Kirschner, Oklahoma City, Blevins & Willsie by Michael W. Blevins, Sayre, for appellee.

OPALA, Justice:

The issues on this appeal are: [1] Does a security interest attach to any part of the debtor's general bank account in which proceeds from sale of collateral have been deposited and commingled with other funds? [2] If so, did the security interest remain impressed upon those funds, under the circumstances of this case, after the debtor has transferred them by check to the depositary bank in payment of an obligation? and [3] Was the bank's subordination agreement to another creditor's security interest latently ambiguous so as to allow parol testimony to ascertain the intent of the parties?

We hold that in this case a perfected security interest in cash proceeds was not destroyed by their deposit in debtor's general as distinguished from special checking account. We further hold that the debtor's transfer of funds to depositary bank for payment of debt was not "in ordinary course of business"[1] and thus did not impair seller's security interest therein. The subordination agreement between the depositary bank and another secured creditor is unambiguous on its face and cannot be explained or completed by parol evidence.

The First American Bank of Erick [Bank] agreed with Jerry Slatton [debtor] to lend him money for the purchase of hogs to be fed and sold. The hogs became Bank's collateral for the loan. Later debtor sought credit from Anderson, Clayton & Co. d/b/a Acco Feeds [Acco] to buy hog feed. In an effort to induce Acco's extension of credit to the debtor the Bank subordinated to Acco its superior security interest in all of debtor's hogs. Some six months later debtor sold part of the hogs which were subject to the Bank's and Acco's security interest. He then placed the proceeds in his general

account at the Bank. His deposit raised the balance from $27.44 to $16,946.59. Debtor drew two checks against this account, one to the Bank for $11,100 (as partial repayment of the loan for hogs, although not yet due) and the other to Acco for $9,819.15. As Bank processed its check first, the debtor's account became depleted of funds sufficient to pay Acco's check.

Acco brought suit against Bank alleging that the refusal to honor its check from debtor was wrongful and that Bank had no right to any of the proceeds in debtor's account since it represented proceeds from the sale of the collateral in which Acco had a security interest superior to that of Bank.

The trial court found that the money in debtor's account was a fund handled in the ordinary course of banking business, and that the check made payable to Bank was received first, honored and paid in the ordinary course of business.

## I

For many years, the requirement that proceeds must be "identifiable" in order for a security interest in them to continue caused courts to conclude that a security interest in proceeds deposited in a debtor's bank account terminated.[2] This viewpoint was based in part upon the belief that it was inconsistent for the secured party to assert a security interest in proceeds which he permitted the debtor to treat as his own.[3]

A recent trend in the other direction is reflected in a series of cases which hold that a security interest in cash proceeds deposited into the debtor's general banking account continues even when commingled with the debtor's other [non-proceeds]

1. As that phrase is used in 12A O.S.1971 § 1–201(9).

2. Skilton, The Secured Party's Rights in a Debtor's Bank Account Under Article 9 of the Uniform Commercial Code, 1 So.Ill.U.L.J. 120, 133 [1977]. This point of view was also expressed in Gilmore, Security Interests in Personal Property, v. II, p. 735 [1965]: "It should be noted that the interest in proceeds continues only so long as the proceeds (including collections received by the debtor) remain identifiable. The interest continues, therefore, identifiable (e. g. checks received by the debtor but not yet deposited in his bank account). *The cutoff point is when the collections cease to be identifiable . . . normally by deposit in a bank account.*" (Emphasis added)

3. Gilmore, supra note 2, at p. 739.

funds.[4] The reasons for the emergency of this trend are twofold. First, § 9–205 of the UCC,[5] which provides that a security interest is not invalid or fraudulent because of liberty in the debtor to use, commingle or dispose of proceeds of collateral, negates the objection to the continuation of a proceeds security interest into a bank account. Second, the requirement of § 9–306(2)[6] that proceeds be "identifiable"[7] can be satisfied by the use of common tracing principles.[8]

■ We hold that whenever proceeds of the sale of collateral can be traced into a bank account, the proceeds remain identifiable and a security interest in them continues as provided by § 9–306(2). This pronouncement will not dispose of the instant case because the proceeds here were not only deposited into the debtor's bank account, they were also disbursed from the account by the drawing of two checks by the debtor. The effect of this disbursement upon the continuation of Acco's security

interest turns upon whether the payment to Bank was in the "ordinary course" of business.[9] In short, a security interest in proceeds remain in a bank account continues until the funds are actually transferred in the ordinary course of business.[10]

■ The Code contains no definition of transfer or transferee in ordinary course. Section 1–201(9) defines "buyer in ordinary course of business" as a "person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods . . .". It is suggested in the UCC Comments to § 9–306 that the drafters intended for the same factors— good faith and lack of knowledge—to qualify a payment or transfer as one in ordinary course. Measuring the instant transaction by this test, if the Bank received payment from the debtor's bank account in good faith and without knowledge that the receipt was in violation of Acco's security

---

**4.** *Brown & Williamson Tobacco Corp. v. First Nat'l Bank*, 504 F.2d 998, 15 UCC Rep.Serv. 553 [7th Cir. 1974]; *Universal CIT Credit Corp. v. Farmers Bank*, 358 F.Supp. 317, 13 UCC Rep.Serv. 109 [E.D.Mo.1973]; *Domain Indus., Inc. v. First Security Bank & Trust Co.*, 230 N.W.2d 165, 16 UCC Rep.Serv. 1417 [Iowa 1975]; *Associates Discount Corp. v. Fidelity Union Trust Co.*, 111 N.J.Super. 353, 268 A.2d 330, 7 UCC Rep.Serv. 1350 [1970]; *Michigan Nat'l Bank v. Flowers Mobile Homes Sales, Inc.*, 26 N.C.App. 690, 217 S.E.2d 108, 17 UCC Rep.Serv. 861 [1975]; *Girard Trust Corn Exchange Bank v. Warren Lepley Ford*, 25 Pa.D. & C.2d 395, 1 UCC Rep.Serv. 531 [Pa.Com.Pl. 1958].

**5.** 12A O.S.1971 § 9–205 [Uniform Commercial Code]. All in-text references are to 12A O.S.

**6.** 12A O.S.1971 § 9–306 provides in part:
"(1) 'Proceeds' includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a contract right. Money, checks and the like are 'cash proceeds'. All other proceeds are 'non-cash proceeds'.
(2) Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds

including collections received by the debtor.
* * * "

**7.** The UCC does not define the term "identifiable". Support for the proposition that commingling destroys identity can be found in the UCC. However, the comments to § 9–306 begin by reference to § 10 of the Uniform Trust Receipts Act which approves the tracing of commingled funds as a means of establishing identity. See also Skilton, supra note 2, at p. 127.

**8.** Skilton, supra note 2, at p. 137.

**9.** UCC Comment 2(c) to 12A O.S.1971 § 9–306 states in part:
"Where cash proceeds are covered into the debtor's checking account and paid out in the operation of the debtor's business, recipients of the funds of course take free of any claim which the secured party may have in them as proceeds. What has been said relates to payments and *transfers in ordinary course*. The law of fraudulent conveyances would no doubt in appropriate cases support recovery of proceeds by a secured party from a transferee out of ordinary course or otherwise in collusion with the debtor to defraud the secured party." (Emphasis added)

**10.** *Citizens National Bank of Whitley County v. Mid-States Development Company, Inc.*, 380 N.E.2d 1243 [Ind.App.1978].

interest [assuming that Acco in fact had a prior security interest], the transfer would be one in ordinary course and Bank would take free of Acco's claim to the funds as proceeds. The Code defines "good faith" as an "honesty in fact in the conduct or transaction concerned".[11] "knowledge" is defined as "actual knowledge".[12]

■ The circumstances surrounding this transfer reveal that Bank demanded payment of a note not yet due out of an account known to it to contain the proceeds of the sale of collateral in which both it and Acco claimed a security interest. It also shows that Bank had reason to believe the debtor still owed money to Acco for feed. Moreover, the Bank had actual knowledge of Acco's potential claim based on the subordination agreement giving Acco a security interest in the proceeds superior to that held by the Bank. As a signatory to that agreement, the Bank must be held to actual knowledge of what it contained.

The last question to be resolved here is whether the subordination agreement gave Acco priority in the collateral and its proceeds, or whether, as Bank contends, the agreement had terminated, thereby restoring the Bank to its position of priority in the collateral and its proceeds.

On its face, the agreement subordinates Bank's security interest in *all of debtor's hogs* to Acco's security interest in the same collateral *for all indebtedness owed by debtor to Acco* for feed. Bank contends that the agreement is ambiguous and incomplete principally because it contains no terms indicating the limit to which Bank agreed to subordinate its lien. Bank contends that parol evidence is admissible to supplement this incomplete written instrument.

■ While an ambiguous instrument may be explained by parol, nothing incon-

sistent with it may be added or taken away.[13] The agreement involved here, although somewhat loosely drafted, does not appear ambiguous or incomplete. It gives Acco a prior security interest to the extent of all indebtedness owed by debtor to Acco. Hence, when Bank took the check drawn on the proceeds of the sale of the hogs, it was bound to actual knowledge that its receipt was in violation of Acco's security interest and therefore could not pass legally as transfer in ordinary course. Acco must be allowed to follow the proceeds of its collateral out of the debtor's bank account and into the hands of the Bank as payee of debtor's check.

## II

The trial court denied the Bank's postjudgment motion to tax attorney's fees. The Bank brought a separate appeal from that order. Both appeals were then consolidated. Because the Bank's separate petition-in-error was not filed here within 30 days of judgment date, we directed the Bank to show cause why its separate appeal should not be considered as counter-appeal and be dismissed because it was not timely brought.[14] The Bank's response concedes that its appeal may be dismissed. Bank's appeal is accordingly dismissed. Judgment against Acco is

REVERSED.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, BARNES, SIMMS and DOOLIN, JJ., concurring.

HARGRAVES, J., dissenting.

HODGES, J., not participating.

---

11. 12A O.S.1971 § 1–201(19).

12. 12A O.S.1971 § 1–201(25).

13. *Cridland v. Franklin*, 191 Okl. 650, 132 P.2d 323, 325 [1942].

14. When the Bank's separate petition in error was lodged, counter and cross appeals were

required to be filed within 30 days of the final judgment or order. Rules 1.15(a) and 1.18, Rules on Perfecting a Civil Appeal, 12 O.S., Ch. 15, App. 2. These rules, later amended in 1978, now allow an aggrieved party to bring a counter or cross appeal not later than 10 days after principal appeal is filed.