(735 P.2d 256)

No. 59,469

BANK OF KANSAS, *Plaintiff-Appellant,* v. HUTCHINSON HEALTH SERVICES, INC., a Kansas Corporation, and THE STATE OF KANSAS, DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, *Defendants,* and THE CENTRAL STATE BANK, TRUSTEE, *Intervenor-Appellee,* and THE STATE DEPARTMENT OF HUMAN RESOURCES OF KANSAS, *Intervenor.*

Opinion filed April 9, 1987.

*Dell Marie Shanahan Swearer* and *Dennis O. Smith,* of Dennis O. Smith, Chartered, of Hutchinson, for plaintiff-appellant.

Thomas A. Dower and Patricia Rose Myers, of Reynolds, Peirce, Forker, Suter, O'Neal & Myers, of Hutchinson, for intervenor-appellee.

Before MEYER, P.J., REES and PARKS, JJ.

MEYER, J: This is an appeal from the district court's determination that appellee's right of setoff had priority over appellant's perfected security interest in proceeds of the debtor's accounts receivable.

Appellant Bank of Kansas brought this action against Hutchinson Health Services, Inc., (hereinafter "Hutchinson Health Services" or "debtor") to collect funds due under several loans. The Bank of Kansas had secured these loans with a security interest in, among other things, the accounts receivable of Hutchinson Health Services.

Hutchinson Health Services maintained its general checking account with appellee, Central State Bank. Central State had also loaned money to Hutchinson Health Services but did not take a security interest in the debtor's accounts receivable.

On November 6, 1984, the debtor deposited a check from the State of Kansas in the amount of $100,864.00 into its general checking account. These funds represented medicaid cost reimbursement payments, that is, payments on accounts receivable by the Department of Social and Rehabilitation Services for the month of October. At the time of this deposit, Hutchinson Health Services' bank account had a balance of $2,515.00. These monies, unlike the check from SRS, were not proceeds from the debtor's accounts receivable.

On November 19, 1984, Central State Bank declared itself insecure on the indebtedness owed by Hutchinson Health Services and set off the balance of its bank account, which at the time totalled $26,229.00, the remainder of the November 6 deposit. Thereafter, the Bank of Kansas brought this collection action against Hutchinson Health Services. Central State intervened in the action, and the Bank of Kansas filed a motion to compel Central State to pay to it the funds set off from the bank account.

The trial court denied the motion, concluding that, although the Bank of Kansas had a perfected security interest in the accounts receivable of Hutchinson Health Services, Central

State's right of setoff took priority over this security interest. After proper K.S.A. 1986 Supp. 60-254(b) certification, Bank of Kansas now appeals.

Although not raised either at trial or discussed in its brief, counsel for Central State Bank at oral argument contended that Hutchinson Health Services' use of medicaid reimbursement payments as collateral for its loan from the Bank of Kansas violated the Social Security Act, and that the Bank of Kansas therefore had no security interest in those funds. We disagree.

Appellee relies on the following provision of the Social Security Act in support of its conclusion that appellant's security interest is invalid:

"A State plan for medical assistance must . . . provide that no payment under the plan for any care or service provided to an individual shall be made to anyone other than such individual or the person or institution providing such care or service, under an assignment or power of attorney or otherwise . . ." 42 U.S.C. 1396a(a)(32) (1982).

Kansas has implemented the provisions of this federal statute in K.A.R. 30-5-59(a)(11).

The purpose of 42 U.S.C. 1396a(a)(32) was to curtail a practice under which

"some physicians and other persons providing services . . . reassigned their medicare and medicaid receivables to other organizations or groups . . . [which] purchased the receivables for a percentage of their face value, submitted claims and received payments in their name." *Danvers Pathology Associates, Inc. v. Atkins,* 757 F.2d 427, 430 (1st Cir. 1985) (quoting H. R. Rep. No. 393, 95th Cong., 1st Sess. 48, *reprinted in* 1977 U.S. Code Cong. & Ad. News 3039, 3051).

This practice resulted in incorrect and inflated claims for services and created administrative problems with respect to determining "reasonable charges" and recovering overpayments. *Danvers Pathology Associates, Inc.,* 757 F.2d at 430 (quoting H. R. Rep. No. 231, 92nd Cong. 2d Sess., *reprinted in* 1972 U.S. Code Cong. & Ad. News 4989, 5090).

In *Matter of Missionary Baptist Foundation,* 796 F.2d 752 (5th Cir. 1986), the court was presented with the identical issue here, that is, whether the debtor's use of medicaid reimbursement payments as collateral for a loan violated 42 U.S.C. 1396a(a)(32). The case involved an accounts receivable financing

arrangement entered into by Missionary Baptist Foundation and the First National Bank of Lubbock, Texas. The debtor's primary source of income was medicare/medicaid reimbursement payments. In an attempt to alleviate its cash flow problems, the debtor negotiated a $500,000 line of credit with the bank and signed a security agreement giving it a security interest in its accounts receivable (*i.e.*, the medicaid reimbursement payments). Under the financing arrangement, the debtor's reimbursement payment would be sent directly to the bank and applied to the debtor's loan balance, which would then be reextended to $500,000. The debtor eventually became overdrawn on its account, and the bank began collecting all of the debtor's available assets to pay off the loan. Soon thereafter, the debtor filed bankruptcy.

In response to the trustee's allegation that this financing arrangement was invalid under 42 U.S.C. 1396a(a)(32), the Fifth Circuit noted that such an interpretation of the statute "would undercut a vital means of financing medical assistance for the needy." *Missionary Baptist Foundation*, 796 F.2d at 758. According to the court, the federal statute was aimed at preventing the "factoring" arrangement described above. The court concluded that the financing arrangement between the bank and the debtor did not come within the prohibition of the federal statute and held that "nothing in these arrangements . . . suggest[s] a violation of 42 U.S.C. 1396a(a)(32)." *Missionary Baptist Foundation*, 796 F.2d at 759.

The financing arrangement in the present case presents no threat of incorrect or inflated claims being made against SRS. The factoring process which the federal statute was intended to prevent was not involved here; SRS directly paid Hutchinson Health Services and the appellant had no opportunity to submit a false claim. We find the Fifth Circuit's analysis persuasive and hold that 42 U.S.C. § 1396a(a)(32) does not prohibit a medical care provider from using medicaid reimbursement payments as collateral for bank loans.

The appellant Bank of Kansas contends the trial court erred in concluding that the proceeds from Hutchinson Health Services' accounts receivable were not identifiable and that the Bank thus lost its perfected security interest in them. We conclude the trial court erred.

K.S.A. 84-9-306 provides:

"(2) Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

"(3) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but *it ceases to be a perfected security interest* and becomes unperfected ten (10) days after receipt of the proceeds by the debtor *unless* . . .

(b) a filed financing statement covers the original collateral and *the proceeds are identifiable cash proceeds.*" (Emphasis supplied.)

Appellant's perfected security interest continued in the proceeds of the SRS check if these proceeds were "identifiable." Although the Uniform Commercial Code (U.C.C.) does not define the term "identifiable proceeds," the cases are almost unanimous in holding that proceeds are "identifiable" if they can be "traced" into the debtor's bank account. *Brown & Williamson T. Corp. v. First Nat. Bk. of Blue Island,* 504 F.2d 998, 1002 (7th Cir. 1974); *Universal C.I.T. Credit Corp. v. Farmers Bank of P.,* 358 F. Supp. 317, 324 (E.D. Mo. 1973); *Ex Parte Alabama Mobile Homes, Inc.,* 468 So.2d 156, 160 (Ala. 1985); *C.O. Funk & Son, Inc. v. Sullivan Equipment,* 92 Ill. App. 3d 659, 662, 415 N.E.2d 1308 (1981), *aff'd* 89 Ill. 2d 27, 431 N.E.2d 370 (1982); *Bank v. Mobile Home Sales,* 26 N.C. App. 690, 694, 217 S.E.2d 108 (1975); *Anderson, Clayton & Co. v. First Am. Bank,* 614 P.2d 1091, 1094 (Okla. 1980). Indeed, the rule finds persuasive, although not binding, support in Kansas law. In *Matter of Turner,* 13 Bankr. 15 (Bankr. D. Neb. 1981), the court, applying Kansas law, stated:

"[I]t is already well-settled [that] [w]here a secured party's cash proceeds are commingled in a general bank account, the secured party has successfully identified the proceeds by tracing them into the account or accounts into which the deposit was made." *Turner,* 13 Bankr. at 22.

We hold that proceeds are "identifiable" within the meaning of K.S.A. 84-9-306(2) if the proceeds can be successfully traced into the debtor's bank account, notwithstanding the fact that the proceeds are commingled with other funds.

Generally, other jurisdictions have borrowed tracing concepts

from trust law in order to determine whether proceeds are "identifiable proceeds" within the meaning of their versions of K.S.A. 84-9-306. *C.O. Funk & Son, Inc.,* 92 Ill. App. 3d at 663. Using these principles, the courts presume that general payments are first made from general funds and the security interest is only eroded to the extent the account balance falls below the amount of proceeds deposited; the debtor is presumed to have spent his own funds first. *Turner,* 13 Bankr. at 22; *Bank v. Mobile Homes Sales,* 26 N.C. App. at 694. This presumption from trust law is recognized in Kansas. In *In re Estate of Miller,* 225 Kan. 655, 659, 594 P.2d 167 (1979), the court stated:

"As a general rule, where a trustee has commingled trust funds with his own, and subsequently withdraws sums from the common mass for his own use, the cestui que trust is entitled to recover to the extent of the trust fund the lowest balance to which the mass has been depleted, for the reason that *the trustee is presumed to have taken his own funds first."* (Emphasis supplied.)

Under K.S.A. 84-1-103, "the principles of law and equity" supplement the provisions of the Uniform Commercial Code. Applying the trust law tracing principles to this case, we conclude that, although the proceeds were commingled with other funds, they did not lose their identifiability. On November 6, 1984, the debtor had an account balance of $2,515.00. On that date, it deposited proceeds from accounts receivable totalling $100,864.00. Thirteen days after this deposit, $26,229.00 remained in the debtor's account. No other funds had been deposited during this time. Under the trust law principles mentioned above, the debtor is presumed to have spent the $2,515.00 first. Any withdrawals thereafter simply dissipated the extent of the appellant's perfected security interest in the proceeds. Under these undisputed facts, we hold that the $26,229.00 is "traceable" to the proceeds of the debtor's accounts receivable and therefore are "identifiable" within the meaning of K.S.A. 84-9-306(2) and (3). The trial court erred by concluding otherwise.

Appellant next contends that the trial court erred in concluding that Central State Bank's right of setoff had priority over the Bank of Kansas' perfected security interest in these identifiable cash proceeds.

To properly address this priority issue, we must first determine the import of K.S.A. 84-9-104(i), which provides that the

provisions of Article 9 do not apply "to any right of setoff." Some jurisdictions have interpreted their versions of this statute to mean that the priority issue between a bank's right of setoff and a security interest must be determined by the common law and is not affected by the U.C.C. *Morrison Steel Co. v. Gurtman,* 113 N.J. Super. 474, 274 A.2d 306 (1971). Others have interpreted the statute to mean simply that an individual exercising a right of setoff need not comply with the requirements of Article 9 (*i.e.,* the process of attachment and perfection) in order to assert a setoff against their debtors, and that the statute does not entirely remove rights of setoff from the operation of Article 9. *Nat. Acceptance Co. of America v. Va. Capital Bank,* 498 F. Supp. 1078, 1083, 1085 (E.D. Va. 1980); *Citizens Nat'l Bank v. Mid-States Devel. Co.,* 177 Ind. App. 548, 555, 380 N.E.2d 1243 (1978); *Assoc. Disc. Corp. v. Fidelity Un. Trust Co.,* 111 N.J. Super. 353, 357-58, 268 A.2d 330 (1970); 1 Gilmore, Security Interests in Personal Property § 10.7, pp. 315-16 (1965). The latter position finds support in Article 9. K.S.A. 84-9-306(4)(d)(i) provides that in insolvency proceedings, a secured creditor with a perfected security interest in proceeds has a perfected security interest in proceeds commingled in a bank account, but its interest is "subject to any right of setoff." Clearly, rights of setoff are not removed entirely from the operation of Article 9. We therefore construe K.S.A. 84-9-104(i) to mean merely that a bank exercising a right of setoff need not comply with the requirements of Article 9 to assert that right. However, the priority as between a right of setoff and a perfected security interest is governed by Article 9.

K.S.A. 84-9-201 states the general priority rule of Article 9 security interests. That statute provides in part:

"Except as otherwise provided by this act a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors."

The relation between a bank and its depositor is that of debtor and creditor. *Dugan v. First Nat'l Bank in Wichita,* 227 Kan. 201, Syl. ¶ 5, 606 P.2d 1009 (1980). A bank's right of setoff is normally considered an unsecured claim, although its right is given secured status in bankruptcy. See 11 U.S.C. § 506(a) (1982). Nonetheless, the appellant's security interest "is effec-

tive . . . against creditors," except as otherwise provided in Article 9. K.S.A. 84-9-201. There being no provision of Article 9 subordinating a perfected security interest in proceeds to a bank's right of setoff, we hold that the perfected security interest prevails. *Universal C.I.T. Credit Corp.*, 358 F. Supp. at 325; *Citizens Nat'l Bank*, 177 Ind. App. at 557; *Assoc. Disc. Corp.*, 111 N.J. Super. at 355-58.

Appellee contends that *Tuloka Affiliates, Inc. v. Security State Bank*, 229 Kan. 544, 627 P.2d 816 (1981), establishes that a bank's right of setoff has priority over a creditor's perfected security interest in a debtor's proceeds. We disagree. The *Tuloka* majority expressly stated:

"The funds in question here, however, did not come into the bank's hands through any right of setoff. True, the bank had a right of setoff against the debtor trailer company, but it had no such right against the home company. The funds were debited solely on the express authority of the president of the home company, and their taking was not through any right of setoff. *Accordingly, cases relative to proceeds taken by setoff are inapplicable herein.*" *Tuloka*, 229 Kan. at 549.

In light of the majority's express recognition that it was not dealing with any right of setoff, appellee's reliance on *Tuloka* for the priority issue herein is misplaced.

At trial, appellee contended that because Countryside Villa Nursing Home (owned by Hutchinson Health Services) was in receivership, the appellant's security interest was subordinated according to the provisions of K.S.A. 84-9-306(4). The argument is not persuasive. The appellant is not claiming proceeds in that corporation's estate, nor is it asserting any claim against the appellee as a result of the receivership. Accordingly, the appellee's argument that K.S.A. 84-9-306(4) gives it priority herein is without merit. See *Nat. Acceptance Co. of America*, 498 F. Supp. at 1084 n.5; *Tuloka Affiliates, Inc.*, 229 Kan. at 550; *Citizens Nat'l Bank*, 177 Ind. App. at 553.

The district court's ruling is reversed and the case is remanded with instructions to grant the Bank of Kansas' motion to compel payment.