OPINION OF THE COURT
Joseph D. Mintz, J.
Plaintiff moves for summary judgment and defendant cross-moves for summary judgment in this action which centers upon the competing claims in a deposit account in defendant *350 bank titled in Murphy Oldsmobile, Inc. (hereinafter Murphy). Plaintiff claims priority as a secured creditor, and defendant denies plaintiffs security interest in the account and claims its right of setoff.
The material facts leading up to the exercise of setoff by defendant bank are not in dispute. Murphy operated an automobile dealership which sold new and used automobiles, and serviced customer-owned automobiles. Plaintiff lent Murphy funds to finance the purchase of new automobiles as inventory, secured by a duly perfected security agreement in all existing and after-acquired inventory and the proceeds therefrom. The validity of this security interest is not in dispute. During the first week of May 1980, Murphy received checks and drafts from the sale of the secured inventory in the amount of $97,888.06, which were deposited in a general operating checking account at the defendant bank. During the first week of May 1980, checks were presented to defendant bank, drawn on the account, and paid. On May 8, 1980, defendant exercised its right of setoff against defaulted loans between defendant and Murphy, and seized the account. The balance in the account was $83,292.25, of which $83,084.84 is calculated to represent proceeds from the sale of inventory, according to the "lowest intermediate balance” method of accounting. It is undisputed that the account was not comprised solely of proceeds from inventory subject to plaintiffs security interest.
Section 9-306 of the Uniform Commercial Code provides that a security interest in collateral continues in "identifiable proceeds”. The Code does not define what constitutes "identifiable proceeds”, and, to date, no New York court has defined the term under the Uniform Commercial Code. This case presents a question, never before decided in a reported New York case: to what extent, if any, does a security interest continue in proceeds, when the proceeds have been mingled with other funds in a general bank account?
Historically, a security interest would not continue in proceeds mingled with other funds, and would terminate should the debtor be permitted to use the proceeds for its business or other purposes. (Benedict v Ratner, 268 US 353 [1925].) The creditor was required to police the collateral, insuring that the proceeds were paid over directly to the secured creditor. Upon the enactment of section 9-205 of the Uniform Commercial Code, this requirement was eliminated, and the concept of the "floating lien” was validated. (See, UCC 9-205, comment 1.) *351 Section 9-205 provides in part: "A security interest is not invalid or fraudulent against creditors by reason of liberty in the debtor to * * * use, commingle or dispose of proceeds, or by reason of the failure of the secured party to require the debtor to account for proceeds or replace collateral.” By reason of section 9-205, the fact that Murphy commingled proceeds, or the fact that plaintiff may have permitted the commingling of proceeds, does not, in and of itself, defeat any security interest plaintiff may have in the proceeds deposited in defendant bank. Instead, plaintiff’s security interest in such proceeds depends solely on whether or not they continue to be "identifiable”, even if commingled, under section 9-306 (2).
Had Murphy deposited the proceeds in a separate account, containing only proceeds, there is little question that plaintiff’s security interest would have continued in such an account, even though Murphy was free to use the funds to purchase new inventory or pay general operating expenses. It is defendant’s position that the mingling of the proceeds with other funds, which are not directly traceable to the proceeds from the sale or other disposition of the collateral, renders such proceeds "unidentifiable”.
Other jurisdictions have addressed this issue and have concluded that the proceeds remained identifiable if they could be traced using tracing methods accepted in trust accounting, known as the "lowest intermediate balance”. These have included: Missouri (Universal C.I.T. Credit Corp. v Farmers Bank, 358 F Supp 317 [ED Mo 1973]), Illinois (Brown & Williamson Tobacco Corp. v First Natl. Bank, 504 F2d 998 [7th Cir 1974]; C.O. Funk & Sons v Sullivan Equip., 89 Ill 2d 27, 431 NE2d 370 [1982]), Indiana (Citizens Natl. Bank v Mid-States Dev. Co., 177 Ind App 548, 380 NE2d 1243 [1978]), Oklahoma (Anderson, Clayton & Co. v First Am. Bank, 614 P2d 1091 [1980]), Nebraska (Norfolk Prod. Credit Assn. v Bank of Norfolk, 220 Neb 593, 371 NW2d 276 [1985]), Iowa (Coachmen Indus. v Security Trust & Sav. Bank, 329 NW2d 648 [1983]), Wisconsin (Commercial Discount Corp. v Milwaukee W. Bank, 61 Wis 2d 671, 214 NW2d 33 [1974]), New Jersey (Associates Discount Corp. v Fidelity Union Trust Co., 111 NJ Super 353, 268 A2d 330 [1970]), Utah (Insley Mfg. Corp. v Draper Bank & Trust, 717 P2d 1341 [1986]), North Carolina (Michigan Natl. Bank v Flowers Mobile Homes Sales, 26 NC App 690, 217 SE2d 108 [1975]), Alabama (Ex parte Alabama Mobile Homes, 468 So 2d 156 [1985]), Pennsylvania (Howarth v Universal C.I.T. Credit Corp., 203 F Supp 279 [WD Pa 1962]), *352 and Kansas (Tuloka Affiliates v Security State Bank, 229 Kan 544, 627 P2d 816 [1981]).
Defendant urges rejection of the decision adopted by these 13 jurisdictions on the following grounds: (1) that it was the intent of the drafters of article 9 of the Uniform Commercial Code to end any security interest in proceeds once the proceeds were mingled with other funds; (2) that the clear language of section 9-306 (4) governing proceeds once the debtor has filed bankruptcy, and the cases thereunder, should control; (3) that New York law does not permit tracing of proceeds absent a real fiduciary relationship between the holder of the proceeds and the one who makes claim to them; and (4) that the "lowest intermediate balance” method of tracing is fictional and imperfect, particularly regarding conflicting security interests, and should be rejected.
i
The intent of the drafters of article 9 is manifested in the opinion of Grant Gilmore, the principal reporter for article 9, who writes: "[T]he collections cease to be identifiable * * * [when] deposited] in a bank account * * *. If a secured party allows his debtor to make and keep collections, he loses his interest * * * when the collections are commingled with other deposits in the debtor’s bank account.” (Gilmore, Security Interests in Personal Property § 27.4 [1965].) The courts that have heretofore considered this issue have rejected the opinion of Professor Gilmore in that the statement was made in 1965 prior to the 1972 amendment* to section 9-306 (1) which included deposit accounts within the definition of proceeds to which a security interest would continue and that the statement is against the spirit of section 9-2Ó5. (See, e.g., Anderson, Clayton & Co. v First Am. Bank, supra, at 1093-1094.) Rather than read such a restrictive view into section 9-306, the courts have preferred, in the absence of a Code definition of identifiable, to rely upon section 1-103’s provision: "Unless displaced by the particular provisions of this Act, the principles of law and equity * * * shall supplement its provisions” (Michigan Natl. Bank v Flowers Mobile Home Sales, supra, 217 SE2d, at 111; Universal C.I.T. Credit Corp. v Farmers Bank, supra, at 324), and look to State law to supplement the concept of "identifiable proceeds”.
*353 n
Section 9-306 (4) details a security interest in proceeds when the debtor is in bankruptcy, and provides in paragraph (b) that the security interest will continue in "identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings”, and under paragraph (d) (1) will continue in commingled cash and deposit accounts, but subject to the bank’s right of setoff (as was attempted here). Section 9-306 (4) was so amended in 1972 in order to codify what had been a statutory change in California (see generally, "Official Reasons for 1972 Change”, NY CLS, Book 35B, UCC 9-306, at 386-387), and what was reflected in some of the case law. (See, e.g., Morrison Steel Co. v Gurtman, 113 NJ Super 474, 274 A2d 306 [1971].) It is generally accepted that these rules do not apply in the absence of insolvency proceedings. (Clark, The Law of Secured Transactions Under the Uniform Commercial Code ][ 10.3 [1980]; 9 Anderson, Uniform Commercial Code § 9-306:25 [3d ed 1985]; White and Summers, Uniform Commercial Code, at 1012 [2d ed 1980].) Instead, State law will define "identifiable proceeds”. (White and Summers, op. cit., at 1012.)
m
In determining the definition of "identifiable proceeds” under State law, the courts have analogized to a trust relationship, where the debtor is the trustee, and the secured creditor the beneficiary. Where the court has used this analogy, the conclusion is inescapable that commingling does not cut off the interest of the secured creditor in proceeds, and tracing under the "lowest intermediate balance” rule. (Michigan Natl. Bank v Flowers Mobile Home Sales, supra; Brown & Williamson Tobacco Corp. v First Natl. Bank, supra; Citizens Natl. Bank v Mid-States Dev. Corp., supra; Universal C.I.T. Credit Corp. v Farmers Bank, supra; Ex parte Alabama Mobile Homes, supra.) The parties agree that were the relationship between Murphy and plaintiff one of trust, tracing would be permitted. However, defendant urges that the trust paradigm is not analogous, and that pre-UCC New York law regarding tracing of proceeds in the absence of a fiduciary relationship should control. Under pre-UCC New York case law, where there is no fiduciary relationship, proceeds cannot be traced into corqmingled accounts. (Matter of Potter, 251 App Div 679 [4th Dept 1937].)
In analyzing the meaning of "identifiable proceeds”, in the *354 context of a security interest, it is important to note that the analogy to a trust relationship does not suggest that tracing into commingled accounts is permitted on the basis of the existence of an actual trust. No court which has determined this issue in other jurisdictions has concluded that the relationship between the debtor and the creditor with a security interest in inventory and proceeds is one of express or constructive trust. The reason for the analogy is first, to show that there is precedent for identifying otherwise fungible money in a larger monetary pool, and, second, because the debtor who has deposited the proceeds into a commingled account has done so subject to his obligations to the creditor to pay over the proceeds, or to reinvest them in other secured inventory. It is because of this obligation that the analogy to a trust is made. This obligation, prior to the enactment of the Uniform Commercial Code, was the subject of a quasi-trust arrangement under the Uniform Trust Receipts Act. In fact, section 9-306 was based upon section 10 of the Uniform Trust Receipts Act (see, UCC 9-306, Comment). Similarly, the Lien Law creates a trust arrangement between owner and contractor regarding public funds, and between contractor and subcontractor for payments by the owner. (Lien Law § 70 et seq.)
In contrast, in Matter of Potter (supra) a will beneficiary was bequeathed property inherited by the testatrix from her predeceased husband, and proceeds therefrom. During her lifetime, she had mingled the proceeds from the inherited property with other funds. In refusing to trace proceeds for the benefit of the will beneficiary, the Fourth Department noted that tracing was permitted where "there was a legal obligation on the holder of the property to keep it separate and the constructive tracing is allowed on the basis of this legal obligation” (supra, at 682-683), but refused to extend the principle where the funds were subject to no obligation whatsoever. Defendants place much emphasis on the language "obligation * * * to keep it separate”, and urge the application of Potter based upon the absence or waiver of a legally enforceable obligation by Murphy to keep its proceeds separate. However, the question presented here is not whether plaintiff is entitled to trace proceeds under pre-UCC law in New York, but rather whether proceeds under section 9-306 are "identifiable” under New York law. In this respect, and under the circumstances presented in the context of a financing arrangement authorized by section 9-205, the analogy to a trust, which recognizes the identifiability of proceeds mingled *355 with other funds, is appropriate. Thus, under New York law, proceeds, as defined in section 9-306, are identifiable in spite of commingling when they can be traced under principles of trust accounting. To conclude otherwise would ignore the principles of the "floating lien” as codified in section 9-205.
rv
Finally, defendants argue that the "lowest intermediate balance” method of accounting commonly used in tracing proceeds is artificial and inefficacious where there are two or more security interests in proceeds. The "lowest intermediate balance” accounting method is based on the assumption that the debtor spends the proceeds in which there is a security interest last. As funds are paid out, they are first paid out of nonproceeds, and then out of proceeds. As nonproceeds are deposited, they do not replenish any proceeds previously paid out due to insufficiency of nonproceeds funds. As defendant notes, if there were two security interests in two distinct species of proceeds, the method would break down unless other assumptions are made. Defendant urges that this is sufficient reason for not permitting the tracing of proceeds in this and like cases. This court does not agree. First, the ineffectiveness of accounting procedures under a set of facts not before the court is insufficient reason to reject an accounting procedure which is effective under the facts as they exist in this case. Second, the breakdown of the accounting method where there are two or more secured creditors is easily remedied by use of the priority methods under article 9, and pro rata accounting where the security interests are in different proceeds. (See, e.g., Coachmen Indus. v Security Trust & Sav. Bank, 329 NW2d 648 [Iowa 1983], supra.) This accounting method has been universally accepted in the other jurisdictions that have interpreted section 9-306 (2), and has long been accepted in this and many other States where trust proceeds are to be traced. There is no compelling reason to reject it.
Defendant also argues that plaintiff has waived any right it might otherwise have in the proceeds in that plaintiff was aware of, and permitted Murphy to, commingle proceeds with other receivables. This argument is in direct contradiction to section 9-205. Plaintiffs security interest in the proceeds continued, despite commingling, and plaintiff is entitled to summary judgment in the amount of $83,084.84 plus interest from May 8,1980 at the statutory rate(s).
*356 Plaintiff also seeks punitive damages. However, in response to defendant’s summary judgment motion, plaintiff has not come forth with any evidence justifying punitive damages. Therefore, defendant’s summary judgment motion is granted insofar as it seeks dismissal of the punitive damage claims.

 Although the amendment to UCC 9-306 is popularly referred to as the 1972 amendment, it was not enacted in New York until 1977 (L 1977, ch 866, § 19).