METROPOLITAN NATIONAL BANK *v.*
LA SHER OIL COMPANY

CA 02-673                                          101 S.W.3d 252

Court of Appeals of Arkansas
Division II
Opinion delivered March 19, 2003

[Petition for rehearing denied April 16, 2003.]

*Williams & Anderson LLP*, by: *John Kooistra, III*, and *Kelly S. Terry*, for appellant.

*Byrne Law Firm, P.A.,* by: *Russell J. Byrne,* for appellee.

WENDELL L. GRIFFEN, Judge. Metropolitan National Bank (Bank) appeals from the trial court's decision that it did not properly identify funds from accounts receivable of its customer, North Little Rock Materials (NLRM), in which the bank holds a security interest and which were deposited into NLRM's account at the bank. As a result of the ruling, the trial court denied appellant's motion to quash a writ of garnishment sought by appellee La Sher Oil Co., a judgment creditor of NLRM. The trial court stayed its order pending this appeal. We reverse and remand.

In 1998, the bank made a loan to NLRM and was granted a security interest in, among other things, NLRM's inventory, equipment, accounts, accounts receivables, and the proceeds of those accounts. The financing statements were filed with the Pulaski County Circuit Clerk and the secretary of state. On April 15, 2001, the bank and NLRM entered into a work-out agreement where the bank agreed to loan an additional $100,000 to NLRM. A financing statement for this transaction was filed with both the circuit clerk and the secretary of state.

On April 24, 2001, La Sher obtained a $133,967.44 consent judgment against NLRM, which was filed on April 25, 2001. On May 18, 2001, La Sher had a writ of execution and a writ of garnishment issued against NLRM, which was served on the bank on May 23, 2001. The bank answered the garnishment on May 24, 2001, stating that the NLRM account had a balance of $34,358.46. On June 13, 2001, the bank amended its answer to the writ of garnishment to assert that it had a prior perfected security interest in the account because the account consisted of proceeds from NLRM's accounts receivables. La Sher replied to the motion to quash, alleging that the security interest arose after the judgment was obtained and that not all of the funds in the account were proceeds from NLRM's accounts receivables.

At the hearing on the bank's motion to quash, Gary Griffin, executive vice-president of the bank in charge of lending, testified that the bank entered into a work-out agreement with NLRM in which the bank agreed to loan NLRM up to $100,000. The security interest granted to the bank covered NLRM's accounts receivables and proceeds from those receivables. He also testified

that, after the work-out agreement, he monitored NLRM's account to insure that money from the receivables was placed into this account and appropriate bills were paid. He admitted that Sharon Tankersley made between two and four deposits of $10,000 each into this account and that funds from other companies affiliated with NLRM were also deposited into the same account. He testified that the account balance prior to the April 15 work-out loan was $11,349.69 and that the funds from the loan were deposited into the account in two deposits: $42,250.47 on April 20, and $57,749.43 on April 27. He testified that, on the date of the garnishment, the account balance was $34,358.46.

Sharon Tankersley testified that she worked in NLRM's office, handling accounts payable and accounts receivable, paying bills, writing checks, and making deposits. She testified that she understood an account receivable of NLRM was money owed to NLRM by one of its customers and that payment of those receivables were "proceeds." She testified that some affiliated businesses that were operated by her and her husband deposited money into NLRM's account and paid some of its bills after the garnishment. She identified several deposit slips for bank deposits made by NLRM and recognized that the money was for payment on NLRM's accounts receivables, totaling $82,232.23. She also identified two loans she made to NLRM totaling $13,000. She testified that NLRM was excluded from its offices and that, when she was allowed to return to the office, she found the records in disarray. She admitted that she did not have the supporting invoices for the deposit slips and that, without those invoices, it would be impossible to verify that the money came from collections of accounts receivables.

At the conclusion of the hearing, the trial judge requested briefs on whether the holder of a perfected security interest in the accounts receivables of a debtor loses that security interest in the proceeds from the receivables when they have been commingled in a bank account with other funds. The trial court found that, because Sharon Tankersley testified that she could not verify that the deposits were from accounts receivables without the supporting documentation, the bank failed to produce sufficient evidence to identify the funds in the account as coming from "proceeds" in which it had a security interest. The trial court denied the bank's motion to quash the garnishment. This appeal followed.

The bank raises three issues on appeal: (1) that the trial court erred by imposing on it an erroneous burden of proof, inconsistent with the Uniform Commercial Code, to show that the funds were "identifiable proceeds"; (2) that the trial court erred in imposing on it a heightened burden of proof; (3) that the trial court erred in ruling that the deposits in NLRM's account were not "identifiable proceeds" within the meaning of Ark. Code Ann. § 4-9-306 (1991).[1] We hold that the trial court imposed an erroneous standard of proof when it concluded that the deposits in NLRM's account were not "identifiable proceeds." Consequently, we must reverse the judgment below and remand the litigation so that the trial court can decide the case using the proper evidentiary standard and applying what is known as the "lowest-intermediate-balance rule."

■ ■ The standard of review of a circuit court's findings of fact after a bench trial is whether those findings are clearly erroneous. Ark. R. Civ. P. 52; *Burke v. Elmore*, 341 Ark. 129, 14 S.W.3d 872 (2000). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *McQuillan v. Mercedes-Benz Credit Corp.*, 331 Ark. 242, 961 S.W.2d 729 (1998). Disputed facts and determination of the credibility of witnesses are within the province of the judge, sitting as the trier of fact. *Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998).

Arkansas Code Annotated section 4-9-306 (1991) does not define "identifiable proceeds." Section 4-9-306(1) defines "proceeds" as "whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds. . . . Money, checks, deposit accounts, and the like, are 'cash proceeds.'" Section 4-9-306(2) provides that a security interest continues in identifiable proceeds, including collections received by the debtor. Section 4-1-103 directs that the Uniform Commercial Code be supplemented by "principles of law and equity." Neither this court nor the

---

[1] In 2001, the General Assembly adopted a new Article 9 to govern secured transactions, effective July 1, 2001. 2001 Ark. Acts 1439. The present case was commenced prior to July 1, 2001, and the prior version governs this case. *See* Act 1439, § 1(c). All references will be to the 1991 version of the statute unless otherwise noted. Former Ark. Code Ann. § 4-9-306 (1991) now corresponds, with modifications, to Ark. Code Ann. § 4-9-315 (2001).

supreme court has decided a case determining whether proceeds are "identifiable" under the Uniform Commercial Code.

However, it is established law that a secured creditor has the burden to trace and identify the funds as the proceeds from secured collateral. *Ragland v. Davis*, 301 Ark. 102, 782 S.W.2d 560 (1990). *See also C.O. Funk & Sons, Inc.*, 89 Ill. 2d 27, 431 N.E.2d 370 (1982). When proceeds of a sale of collateral are placed in the debtor's bank account the proceeds remain identifiable, and a security interest in the funds continues even if the funds are commingled with other funds. *Anderson, Clayton & Co. v. First Am. Bank*, 614 P.2d 1091 (Okla. 1980). The rules employed to distinguish the identifiable proceeds from other funds are liberally construed in the creditor's favor by use of the "intermediate-balance rule." Most courts that have considered the question have adopted this test.[2] This rule provides a presumption that proceeds of the sale of collateral remain in the account as long as the account balance equals or exceeds the amount of the proceeds. The funds are "identified" based on the assumption that the debtor spends his own money out of the account before he spends the funds encumbered by the security interest. If the account balance drops below the amount of the proceeds, the security interest in the funds on deposit abates accordingly. This lower balance is not increased if non-proceeds funds are later deposited into the account. *See* 4 Ronald Anderson, *Uniform Commercial Code* § 9-306:30 at 233 (3d ed. 1999); Robert H. Skilton, *The Secured Party's Rights in a Debtor's Bank Account Under Article 9 of the Uniform Commercial Code*, 1977 So. ILL. UNIV. L.J. 120, 140-43 (1977). The rule is analogous to the presumption which arises when a trustee commingles trust funds with his own. *See Covey v. Cannon*, 104 Ark. 550, 149 S.W. 514 (1912). If a presumption such as the lowest intermediate balance rule were not

---

[2] *See, e.g., Sony Corp. of Am. v. Bank One*, 85 F.3d 131 (4th Cir. 1996) (applying West Virginia law); *Ex parte Alabama Mobile Homes, Inc.*, 468 So. 2d 156 (Ala. 1985); *ITT Commercial Fin. Corp. v. Tech Power, Inc.*, 43 Cal. App. 4th 1551, 51 Cal. Rptr. 2d 344 (1996); *C.O. Funk & Sons, Inc. v. Sullivan Equip., Inc., supra; Ellefson v. Centech Corp.*, 606 N.W.2d 324 (Iowa 2000); *Bank of Kansas v. Hutchinson Health Servs.*, 12 Kan. App. 2d 87, 735 P.2d 256 (1987); *Conagra, Inc. v. Farmers State Bank*, 237 Mich. App. 109, 602 N.W.2d 390 (1999); *Fricke v. Valley Prod. Credit Ass'n*, 778 S.W.2d 829 (Mo. Ct. App. 1989); *Michigan Nat'l Bank v. Flowers Mobile Home Sales, Inc.*, 26 N.C. App. 690, 217 S.E.2d 108 (1975); *Anderson, Clayton & Co. v. First Am. Bank, supra.*

used, no funds placed in an account with funds from other sources could be "identified."

> The rule, which operates on a common-sense view that dollars are fungible and cannot practically be earmarked in an account, provides a presumption that proceeds remain in the account as long as the account balance is equal to or greater than the amount of the proceeds deposited. The proceeds are "identified" by presuming that they remain in the account even if other funds are paid out of the account.

*C.O. Funk & Sons*, 89 Ill. 2d at 31, 431 N.E.2d at 87.

The trial court ruled that the bank had not produced sufficient evidence to allow the account balance to be identified as coming from NLRM's accounts receivables. Specifically, the trial court found that, "aside from Mrs. Tankersley's testimony, the bank failed to produce evidence, such as NLRM's business records, that would conclusively establish that any of the funds deposited into the account were identifiable cash proceeds from NLRM's accounts receivable."

We believe that the reference to the failure to "conclusively establish" that account funds were identifiable proceeds imposed an erroneous burden of proof on the bank. The trial court was referring to Tankersley's testimony concerning her lack of the corresponding invoices. She also stated that, because NLRM was excluded from its offices, she did not have those invoices. Tankersley had firsthand knowledge of the checks listed in the deposit slips and could establish that the proceeds came from NLRM's accounts receivables. *See JAG Consulting v. Eubanks*, 77 Ark. App. 232, 72 S.W.3d 549 (2002). The invoices would have added certainty to the evidence but were not required because La Sher offered no evidence that the deposits testified to by Tankersley came from sources other than accounts receivable. The bank's burden of proof was by a preponderance of the evidence, meaning the evidence having greater weight or convincing force. *See Smith v. Magnet Cove Barium Corp.*, 212 Ark. 491, 206 S.W.2d 442 (1947).

Reversed and remanded.

ROBBINS and BIRD, JJ., agree.