Johanne SASSE et al., Plaintiffs,

v.

Peter OTTLEY, as President, et al., Defendants.

No. 77 Civ. 1570.

United States District Court, S. D. New York.

May 5, 1977.

Schekter, Aber & Hecht, P. C., New York City, for plaintiffs.

Vladeck, Elias, Vladeck & Lewis, P. C., New York City, for defendant, Ottley.

N. Y. C. Dept. of Social Services, New York City, for defendant, Smith.

Robert B. Fiske, Jr., U. S. Atty., S. D. New York, New York City, for defendant, Califano.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendants, Toia and Whalen.

VINCENT L. BRODERICK, District Judge.

Plaintiffs Johanne Sasse, Allan Lester, and Charlotte Czako (the "plaintiff-patients") are patients in plaintiff Bruckner Nursing Home ("Bruckner"), and are among 194 of the 196 residents therein who are recipients of medical assistance benefits pursuant to the "Medicaid Program", 42 U.S.C. §§ 1396, *et seq.* Defendants are the president and trustees of Local 144 Hotel, Hospital, Nursing Home & Allied Health Services Union, SEIU, AFL–CIO ("Local

144"), the union representing employees of Bruckner; the Secretary of the United States Department of Health, Education and Welfare; the Commissioner of the Department of Social Services of the State of New York; the Commissioner of the New York State Department of Health; and the Commissioner of the City of New York Department of Social Services ("City Department").

On or about January 26, 1977, defendant Local 144 obtained judgments in excess of $30,000 against plaintiff Bruckner. After the entry of those judgments, Local 144 served restraining notices under N.Y.C.P.L.R. § 5222 and issued execution to the Sheriff of New York City for service upon the City Department, the local disbursing agent of Medicaid funds. At the time the restraining notices were served, Bruckner had already rendered services to the plaintiff-patients, and had billed the City Department for those services. All parties herein agreed that, for purposes of this action, liens had been established ˙ by defendant Local 144 upon funds in the hands of the City Department which were payable, immediately upon audit, to plaintiff Bruckner, on account of medical services already rendered to, *inter alia*, the plaintiff-patients.[1]

Plaintiffs claim that the restraining notices placed by Local 144 are prohibited by Title XIX of the Social Security Act (42 U.S.C. §§ 1396, *et seq.*) in that under 42 U.S.C. § 1396a(a)(18) they constitute impermissible liens against the property of the plaintiff-patients. They claim, in this connection, that the service of the allegedly prohibited restraining notices without notice to the plaintiff-patients, and opportunity for them to be heard, violated the Due Process Clauses of the Fifth and Fourteenth Amendments. Plaintiffs seek a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, enjoining defendants from interfering *pendente lite* with Medicaid payments by the City Department to Bruckner, and enjoining the defendants from enforcing, or otherwise executing with respect to, the restraining notices served upon the City Department.

A temporary restraining order ("TRO") was granted on April 1, 1977,[2] and after a hearing on April 5 it was modified and extended to April 21, 1977.[3] A second hearing was held on April 12, 1977. No evidence was adduced at either hearing: all parties stipulated to the substantive facts set forth in this memorandum.

Jurisdiction is properly invoked under 28 U.S.C. § 1331(a) as this case involves the interpretation and application of a federal statute, 42 U.S.C. § 1396a(a)(18), and plaintiffs reasonably allege that the amount in controversy exceeds $10,000 exclusive of interest and costs. *Cf., Aitchison v. Berger*, 404 F.Supp. 1137, 1143 (S.D.N.Y.1975), *aff'd.* 538 F.2d 307 (2d Cir. 1976). Plaintiffs also allege violation of the Fifth and Fourteenth Amendments of the Constitution.

The Medicaid Program, 42 U.S.C. §§ 1396 *et seq.*, authorizes the appropriation of mo-

---

1. While the restraining notices themselves apparently do not constitute liens under New York Law (see *Matter of International Ribbon Mills*, 36 N.Y.2d 121, 365 N.Y.S.2d 808, 325 N.E.2d 137 (1975)), the execution to the sheriff did create liens under N.Y.C.P.L.R. § 5234.

2. The TRO enjoined the defendants from enforcing or otherwise executing upon the restraining notices already served upon the City Department; enjoined the defendants from taking further action to attach Medicaid payments; restrained the City, State and Federal defendants from making any payments to Bruckner; and dispensed with the necessity of filing an undertaking.

3. As modified, the TRO was expanded to include the additional parties defendants, Moses Braunstein, Meyer Tempkin, Dr. Lee Lichtman, Robert Carr, and John Kelley, all as trustees of Local 144. It was further ordered that all monies payable by the City Department to Bruckner in excess of $39,125.64 (the amount of the judgments against Bruckner), be paid; and that the said sum be retained by the City Department pending further order of this Court. Finally, Bruckner was directed to post an undertaking in the amount of $6,000, to secure defendants for such costs and damages, including sheriff's poundage fees, as may be incurred as a result of the granting of the TRO.

nies to be made available "to States which have submitted, and had approved by the Secretary of Health, Education, and Welfare, State plans for medical assistance" to indigents. The program provides that the federal government will participate with state and local governments in providing funds to pay for necessary medical services rendered. For a state government to qualify, the state's plan for medical assistance must meet the criteria set forth in Section 1396a(a).

Sub-paragraph (18) of Section 1396a(a) requires a State plan for medical assistance to "provide that *no lien may be imposed against the property of any individual* prior to his death *on account of medical assistance paid or to be paid on his behalf* under the plan (except pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual) . ." (emphasis added).[4]

New York State has elected to participate in the Medicaid Program. The New York provision enacted to meet the requirements of § 1396a(a)(18) is set forth in the New York State Social Services Law § 369[5], which by its terms comports with the requirements of § 1396a(a)(18):

> (a) no lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under this

title, except pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual, and (b) there shall be no adjustment or recovery of any medical assistance correctly paid on behalf of such individual under this title, except from the estate of an individual who was sixty-five years of age or older when he received such assistance, and then only after the death of his surviving spouse, if any, and only at a time when he has no surviving child who is under twenty-one years of age or is blind or permanently and totally disabled, provided, however, that nothing herein contained shall be construed to prohibit any adjustment or recovery for medical assistance furnished pursuant to subdivision three of section three hundred sixty-six of this chapter.

Thus at issue here is the statutory and constitutional applicability of 42 U.S.C. § 1396a(a)(18) (and of New York State Soc. Serv.L. § 369) to the restraining notices served upon the City Department by Local 144. *Cf., Aitchison v. Berger*, 404 F.Supp. 1137 (S.D.N.Y.1975), *aff'd*, 538 F.2d 307 (2d Cir. 1976).

█ I find that the liens placed by Local 144 upon funds payable to Bruckner by the City Department do not violate 42 U.S.C. § 1396a(a)(18) or New York State Soc. Serv.L. § 369, since neither of those provi-

---

4. The full text of 42 U.S.C. § 1396a(a)(18) indicates that the thrust of the statute is to prohibit, or strictly to limit, efforts by states to recoup from patient-beneficiaries, or their estates, amounts paid for medical assistance to those patient-beneficiaries (see pp. 443–444, *infra*):

   (a) A State plan for medical assistance must—

   \* \* \* \* \* \*

   (18) provide that no lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the plan (except pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual), and that there shall be no adjustment or recovery (except, in the case of an individual who was 65 years of age or older when he received such assistance, from his estate, and then only after the death of his surviving spouse, if any, and

only at a time when he has no surviving child who is under age 21 or (with respect to States eligible to participate in the State program established under subchapter XVI of this Chapter), is blind or permanently and totally disabled, or is blind or disabled as defined in section 1382c of this Title (with respect to States which are not eligible to participate in such program)) of any medical assistance correctly paid on behalf of such individual under the plan.

5. There are several New York State Court decisions interpreting the New York State provision. *See generally, Baker v. Sterling*, 39 N.Y.2d 397, 384 N.Y.S.2d 128, 348 N.E.2d 584 (1976); *Matter of Estate of Harris*, 88 Misc.2d 60, 387 N.Y.S.2d 796 (Surrogate's Ct. Wayne Co. 1976); *In re Estate of Colon*, 83 Misc.2d 344, 372 N.Y.S.2d 812 (Surrogate's Ct. Kings Co. 1975).

sions applies to such liens[6]. Thus I do not reach the constitutional question suggested by plaintiffs.

The instant restraining notices stem from controversy between a union of nursing home employees and their nursing home employer. The judgments to which they relate are against the nursing home: it is property of the nursing home, not property of the beneficiaries,· which the judgment creditors seek to reach. Congress did not intend, in enacting § 1396a(a)(18), to insulate nursing homes from their judgment creditors. The notices served by the Funds upon the City Department are intended to restrain payment to the nursing home of monies owed by the City Department, as agent for the governmental participants in the Medicaid Program, to that nursing home for services already provided under the Program. Ninety-eight percent of the patients of the judgment debtor, Bruckner, are receiving Medicaid assistance. If this Court were to hold that Bruckner's judgment creditors were not permitted to place liens on monies due Bruckner in the hands of the City Department it would severely and unjustly interfere with the rights of the creditors to what is for all practical purposes the judgment debtor's only real source of funds.

Nursing homes, as are other "providers" under Medicaid, are reimbursed for services already furnished. This inevitably presents cash flow problems. The confidence of creditors in nursing homes which participate in the Medicaid Program, and their willingness to deal with such nursing homes on other than a cash-on-the-barrelhead basis, would be severely shaken if this Court were to interpret 42 U.S.C. § 1396a(a)(18) as mandating the suspension of the effectiveness of New York's lien laws with respect to Medicaid Program providers.

The "anti-lien" provision requires that a state plan for medical assistance "provide that no lien may be imposed against *the property of any individual* . . . on

account of medical assistance paid or to be paid on his behalf under the plan . . . ." (emphasis added). The regulation promulgated to implement 42 U.S.C. § 1396a(a)(18) provides the following definition of the term "property":

> Under this regulation, the term "property" includes not only the homestead but all other personal and real property in which the recipient has a legal interest; and a money payment under another program may not be reduced as a method of recovery for vendor payments incorrectly paid under Title XIX of the Act.

45 C.F.R. § 249.70 (1976).

The only reasonable construction of the prohibition with respect to liens on "property" as used in 42 U.S.C. § 1396a(a)(18) is that the prohibition forbids liens upon property of the recipients of medical assistance—in this case the plaintiff-patients, *inter alia.*

The Medicaid funds here restrained are to be paid directly and only to Bruckner for services theretofore rendered to Medicaid recipients. Bruckner has billed the City Department directly, and immediately upon auditing is entitled to payment for services *already furnished.* As the medical services for which the funds are being restrained have already been provided, plaintiff-patients do not have any property interest therein. Moreover, the plaintiff-patients, although recipients of the services, would not be liable in the event that the Medicaid funds are not paid to Bruckner. *See Amsterdam Memorial Hospital v. Cintron,* 52 A.D.2d 404, 384 N.Y.S.2d 225 (3rd Dept. 1976).

The prohibition of 42 U.S.C. § 1396a(a)(18) was interpreted in *Wilczynski v. Harder,* 323 F.Supp. 509 (D.Conn. 1971), as intended to restrict state efforts to recoup, from beneficiaries of medical assistance, monies of the federal or state or local governments which have been expended pursuant to the plan:

---

**6.** *See Wilczynski v. Harder,* 323 F.Supp. 509, 516 (D.Conn.1971), discussed *infra,* pp. 443–444.

Although the meaning of the phrase "on account of" as used in the statute is not entirely free from doubt, it would seem to us that the most obvious meaning is to prohibit state provisions designed to recoup state money spent on medical payments pursuant to the plan, . . . . The same sentence in the statute which imposes the lien prohibition also prohibits any "adjustment or recovery (with some exceptions not here relevant) of any medical assistance correctly paid on behalf of [any] individual under the plan." 42 U.S.C. § 1396a(a)(18). This strengthens the view that the concern of Congress was with state efforts (either by lien on the recipient's property or direct action against him) to require the recipient, where possible, to make restitution of moneys spent on his behalf under the Title XIX program.

323 F.Supp. at 516. This interpretation is consistent with the Congressional purpose, to the extent such purpose is apparent.[7] It is clear that the intended beneficiaries of this statute are individuals in need of medical assistance. It is the property of those individuals—and only that property—which Congress sought to insulate from lien.

In sum, the restraining notices do not constitute "liens" imposed in contravention of § 1396a(a)(18).

 *Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247 (2d Cir. 1973), enunciates the principles that for a preliminary injunction to issue, the movant must establish either the probability of success on the merits or the presence of questions of such moment with respect to the merits as to be truly litigable:

> The settled rule is that a preliminary injunction should issue only upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

483 F.2d at 250 (emphasis in original). Plaintiffs have failed to satisfy either of the prongs of *Sonesta* which address the "merits", and thus this Court need not consider the second prongs of either of the alternative standards articulated in *Sonesta.*[8]

An order dated April 21, 1977 has been made herein vacating the temporary restraining order made on April 1, 1977, and denying plaintiff's motion for a preliminary injunction. The foregoing constitutes findings of fact and conclusions of law forming the predicate for the order of April 21.

---

**7.** The legislative history and commentary are of limited assistance. *See* S.Rep.No.404, 89th Cong. 1st Sess., Social Security Amendments of 1965, Pub.L. 89–97, *set forth in* 1965 U.S. Code Cong. and Adm.News, pp. 1943, 2147.

**8.** To the effect that *Sonesta* has continued vitality in the Second Circuit see *Jacobson & Co., Inc. v. Armstrong Cork Co.,* 548 F.2d 438, 441, n. 2 (2d Cir. 1977).