790 P.2d 369

G. David CHINCHURRETA, Plaintiff–Counterdefendant–Respondent,

v.

EVERGREEN MANAGEMENT, INC., an Idaho corporation, d/b/a Evergreen Manor; and Miles Taggart, individually, Defendants–Counterclaimants,

and

State of Idaho, Department of Health & Welfare, Intervenor–Respondent,

and

Lowell Christensen and Paul Christensen, Intervenors–Appellants.

No. 17376.

Court of Appeals of Idaho.

Aug. 10, 1989.

Addendum March 28, 1990.

Petition for Review Denied May 4, 1990.

Bradley Hall and Donald Lojek (Lojek & Hall, Ctd.), Boise, for interventor-appellants. Bradley Hall argued.

Robert C. Paine, Paine & Pica, Boise, for Chinchurreta.

Jim Jones, Atty. Gen. by Michael Stoy, Deputy Atty. Gen., Boise, for State of Idaho. (Appearance only.)

Before WALTERS, C.J., BURNETT, J., and BENGTSON, J. Pro Tem.

PER CURIAM.

This appeal arises from a dispute over entitlement to Medicaid funds disbursed by the Department of Health and Welfare to a health care facility. The funds were attached by David Chinchurreta in a debt collection suit against the owner and manager of the facility. The district court ordered the funds to be released to Chinchurreta. The dispositive issue is whether the funds were wrongfully attached. We affirm the district court's order.

The facts are as follows. Chinchurreta loaned $110,000 to Evergreen Management,

Inc., and to Evergreen's controlling shareholder, Miles Taggart. Evergreen did business as the Homedale Care Center, a health care facility. The facility was located on property rented from Lowell and Paul Christensen. It was managed by Keith Holloway. The facility's operating revenue consisted in part of payments from the Department of Health and Welfare for services provided to Medicaid recipients.

Evergreen and Taggart ultimately defaulted on their debt to Chinchurreta. Chinchurreta obtained a money judgment against them. The sheriff, on behalf of Chinchurreta, attached all money due and owing Evergreen. This included a payment of $33,113 from Health and Welfare for services rendered to Medicaid recipients in November, 1987. Chinchurreta then attempted to gain possession of the attached funds. Motions to intervene were filed by the Christensens, who were also owed money by Taggart and Evergreen, and by Keith Holloway as "agent" for the facility. The Christensens' motion to intervene was denied due to lack of standing. Holloway's motion to intervene was granted, but he was awarded no part of the attached funds. Instead, the district judge ordered that the funds be released to Chinchurreta. A notice of appeal naming the Christensens and Holloway as appellants was thereafter filed.

The Christensens argue that the attachment of funds was in violation of I.C. § 56-223. The statute provides as follows:

*Public assistance not assignable.*—Public assistance awarded under this act shall not be transferable or assignable, and none of the money paid or payable under this [act] shall be subject to execution, attachment, or other legal process; except that the department may transfer funds to another public agency in lieu of payments to recipients, said funds to be transferred by such agency to project sponsors for payment as wages to said recipients participating in special work projects under the provisions of part C of title IV of the Social Security Act.

■ The Christensens maintain that the funds at issue are public assistance within the meaning of I.C. § 56–223, and cannot be attached. They assert that because these funds were paid for the benefit of Medicaid recipients, although not to them, the statute precludes attachment. The statute does not expressly specify whether public assistance paid to a health care provider as reimbursement for services rendered to a Medicaid recipient is nonattachable. Therefore, the statute is in need of construction. In undertaking this task, we endeavor to ascertain and give effect to legislative intent. *Easley v. Lee,* 111 Idaho 115, 721 P.2d 215 (1986). We examine the literal wording of the statute and consider such extrinsic matters as context, objects in view, evils to be remedied, public policy and contemporaneous construction. *Local 1494 of the International Association of Firefighters v. City of Coeur d'Alene,* 99 Idaho 630, 586 P.2d 1346 (1978).

The clear policy behind the statute is to protect Idaho citizens who receive public assistance. It is not to protect health care providers from creditors. Indeed, if the statute were deemed to protect the providers, creditors would lose confidence in their ability to collect debts under distressed circumstances. Thus, if we interpreted I.C. § 56–223 as do the Christensens, nursing homes might find it more difficult to obtain credit. We note that other jurisdictions have reached similar conclusions. *See, e.g., Matter of Missionary Baptist Foundation of America, Inc.,* 796 F.2d 752 (5th Cir. 1986); *Sasse v. Ottley,* 432 F.Supp. 440 (S.D.N.Y.1977); *Bank of Kansas v. Hutchinson Health Services,* 12 Kan.App.2d 87, 735 P.2d 256 (1987).

■ In reaching our decision, we emphasize that our holding is narrowly tailored to the case at hand. We do not decide today that all forms of indirect public assistance are attachable. There may be instances where allowing such attachment would harm a party protected by I.C. § 56–223. For example, aid to dependent children is generally paid in advance to parents, enabling them to purchase necessities for the children. Clearly, allowing attachment of such aid before the necessities were purchased could harm the dependent children. However, this is not such a case. The health care provider here was being paid for services already rendered to the Medicaid patients. These patients had received services the Medicaid program was intended to purchase. They were not harmed by the attachment. We decline to broaden I.C. § 56–223 into a shield for health care providers who are paid with government aid funds.

Therefore, the order releasing funds to Chinchurreta is affirmed. Costs to the respondent, Chinchurreta. No attorney fees on appeal.

## ADDENDUM

### ON DENIAL OF PETITION FOR REHEARING

PER CURIAM.

Our lead opinion holds that public assistance funds disbursed to medical service providers are not immune to attachment under I.C. § 56–223. In a petition for rehearing, the appellants now argue that we have improperly placed a narrowing interpretation upon a statute that has no need for judicial construction because its language is plain and unambiguous. The appellants contend that I.C. § 56–223, when read *in pari materia* with other statutes relating to public assistance, creates a broad exemption against attachment of funds, without distinguishing between those disbursed directly to public assistance recipients and those disbursed to service providers.

It is true, of course, that I.C. § 56–223 refers simply to "public assistance" without specifically including or excluding funds paid to service providers. At I.C. § 56–201(e), however, we find that "public assistance" is defined as "general assistance, old-age assistance, aid to the blind, aid to dependent children, aid to the disabled, and medical assistance...." These categories of assistance are described, in turn, as awards to certain eligible classes of *persons.* For example, I.C. § 56–209b provides as follows:

Medical assistance shall be awarded to *persons* who are recipients of old-age assistance, aid to dependent children, aid to the blind, aid to the disabled, and such *persons* as mandated by title XIX of the Social Security Act.... [Emphasis supplied.]

Thus, when I.C. § 56-223 is read *in pari materia* with other related statutes, it is not literally clear—as appellants assert—that immunity from attachment goes beyond "public assistance" disbursed to needy persons and includes funds disbursed to third-party service providers.

Because the scope of I.C. § 56-223 is in doubt, we again conclude that the statute invites judicial construction. As our lead opinion explains, we view the underlying legislative policy as one of protecting individuals receiving public assistance, rather than of protecting service providers from their creditors. This interpretation comports with common sense. It would be unsound to suggest that the statute applies to money received by service providers from persons on public assistance; by parity of reasoning, it would be unsound to hold that the statute applies to such payments when made directly by the state on behalf of those persons.

Finally, we note that the federal Social Security Act does not require that payments to service providers be immunized against transfer, assignment, execution or attachment. Indeed, one of the cases cited by our lead opinion, *Matter of Missionary Baptist Foundation,* 796 F.2d 752 (5th Cir. 1986), holds that a state statute providing such broad immunity would be *contrary* to the intent of Congress because it would impair the ability of service providers to obtain commercial financing and, therefore, might impair the availability of services to needy individuals.

Accordingly, we adhere to the result announced in our lead opinion. The petition for rehearing is denied.