9 P.3d 1226

**In the Interest of Jane DOE, a child under the age of eighteen years.**

**Jane Roe, Appellant,**

v.

**State of Idaho, Department of Health and Welfare; Jane Doe I; John Doe; and Guardian Ad Litem, Respondents.**

**No. 26248.**

Supreme Court of Idaho,
Idaho Falls, May 2000 Term.

Sept. 6, 2000.

Hyde, Wetherell, Bray, Haff French, Chtd., Boise, for appellant. Christopher D. Bray argued.

Hon. Alan G. Lance, Attorney General; Mary Jo Beig, Deputy Attorney General, Boise, for respondent State of Idaho. Mary Jo Beig argued.

Hummel Fletcher, Boise, for respondent John Doe. Lois K. Fletcher argued.

SILAK, Justice.

This is an appeal from an order of the magistrate court denying a motion to intervene made by appellant Jane Roe (Roe) in Child Protective Act (CPA) proceedings involving her granddaughter Jane Doe (the Child).

## I.

### FACTUAL AND PROCEDURAL HISTORY

#### A. Facts

Respondents John Doe (John) and Jane Doe I (Jane) were married in February 1987. John and Jane separated in September 1989

and were divorced in Santa Cruz County, California in February 1990. Jane had been living with a boyfriend prior to her divorce from John. In late September or early October of 1990, Jane asked if she could spend the night with John because she and the boyfriend had been fighting. John acquiesced, and he and Jane had sexual intercourse during the visit. John and Jane had no physical contact after that isolated episode. On May 17, 1991, Jane gave birth to the Child.

When John learned that Jane had given birth to the Child, he attempted to visit her at the boyfriend's home. Jane did not leave her room to speak with John, but Roe, Jane's mother, showed the Child to John. John left after a few minutes. John testified in an affidavit that he never suspected that the Child was his daughter because the Child was born fewer than nine months after his most recent sexual encounter with Jane. John also testified that Jane represented to him in subsequent communications that the boyfriend was the Child's father.

Jane eventually moved to Boise, Idaho. On June 23, 1997, Jane stipulated that the Child fell under the purview of the CPA, and on that same day, the magistrate court entered an order giving respondent Department of Health and Welfare (the Department) legal custody of the Child. On April 4, 1999, a social worker from the Department's Child Protection Division contacted John. The social worker informed John that the Child had been removed from Jane's care pursuant to the CPA because of reports of abuse and neglect. The social worker also told John that a paternity test had established that the boyfriend was not the Child's father, and asked John to undergo paternity testing. John agreed to the testing, which established that he was the Child's biological father. When John was notified on May 18, 1999 that the Child was his daughter, he stated that he wanted to establish a relationship with her.

### B. Procedural Background

On August 13, 1999, Roe filed a motion in the Child's CPA proceedings, seeking permanent placement of the Child with her. The motion also asked the court to direct the Department to cease reunification efforts with John, the Child's biological father. This motion was not heard, however, because Roe was not a party to the CPA action. On August 26, 1999, Roe filed a motion for permissive intervention in the CPA proceedings, pursuant to I.R.C.P. 24(b). On September 7, John filed a motion to dismiss Roe's motion to intervene and an accompanying affidavit. The next day, the Child's guardian *ad litem* filed an addendum to her renewal report, recommending that the Department seek reunification of the Child with her biological father.

On November 19, 1999, the magistrate court denied Roe's motion to intervene. The magistrate ruled that the CPA recognized only parents, guardians or other legal custodians, and a child's guardian *ad litem* as parties to CPA proceedings. The magistrate further ruled that while the Adoption and Safe Families Act of 1997 (ASFA), 111 Stat. 2115 (1997) (codified as amended at 42 U.S.C. 675(5)(G)) entitles foster parents and relatives providing care with notice and an opportunity to be heard in any proceeding involving the child, ASFA does not grant "a relative providing care the status of being a party in the action." The magistrate concluded that the CPA did not provide a conditional right to intervene as required by I.R.C.P. 24(b), and denied the motion for permissive intervention. This Court entered an order on February 18, 2000 granting Roe's motion for permissive appeal of the magistrate court's denial of the motion to intervene.

In addition to this CPA action, a paternity action filed by John (Ada County Case No. CV DR 9901928D) and a guardianship proceeding filed by Roe (Ada County Case No. SP GM 9900050M) are pending in district court. A proceeding to terminate parental rights was also initiated by Roe (Ada County Case No. SP AT 9900162M), but Roe has voluntarily dismissed her action to terminate John's parental rights.

## II.

### ISSUES ON APPEAL

Roe raises the following issues on appeal:
A. Whether a grandmother, who has established a strong relationship with her granddaughter as a *de facto* par-

ent, including continuous care under a placement order entered by the magistrate court in June 1997, has legal standing to seek permanent placement of her granddaughter under the CPA.

B. Whether the Department's characterization of Roe as a "foster parent" under the ASFA eliminates Roe's standing to intervene under I.R.C.P. 24(b).

C. Whether, in the absence of prior "state action" separating the biological father from a child under the CPA, the ASFA requires reunification with a biological father.

D. Whether the ASFA's policy of reuniting a parent and child prevails over or preempts the policy that the permanent placement of a child be in the least disruptive environment as provided by I.C. § 16–1623(k).

## III.

## STANDARD OF REVIEW

A court's decision to grant or deny a motion to intervene is discretionary. *See Rodriguez v. Oakley Valley Stone, Inc.*, 120 Idaho 370, 377, 816 P.2d 326, 333 (1991). When a court's discretionary decision is reviewed on appeal, the appellate court considers "(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) and whether the trial court reached its decision by an exercise of reason." *Sun Valley Shopping Ctr., Inc. v. Idaho Power, Inc.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

## IV.

## ANALYSIS

### A. The Magistrate Court Did Not Abuse Its Discretion In Denying Roe's Motion For Permissive Intervention.

The rule governing permissive intervention states, in pertinent part:

Upon timely application anyone may be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

I.R.C.P. 24(b). The rule, therefore, provides for two alternative methods for obtaining permissive intervention. A party may intervene: 1) where a statute confers a conditional right to intervene, or 2) where an applicant's claim or defense has a question of law or fact in common with the matter in which the applicant seeks intervention.

The magistrate court ruled that neither the CPA nor the ASFA provided for participation by grandparents who are providing care for the child in question. The magistrate court determined that Roe had no conditional statutory right to intervene and concluded that the legislature did not intend to allow grandparents to become parties to CPA proceedings. The magistrate therefore denied the motion for permissive intervention. Roe asserts that the magistrate court erred in determining that she did not have "standing to intervene." Roe also argues that the CPA confers a conditional right to intervene, and that her claim for permanent placement has questions of law and fact in common with the CPA proceedings.

### 1. The district court did not rule that Roe has no "standing to intervene."

First, Roe argues that she is the Child's *de facto* parent and as such has standing to intervene.[1] Roe argues that her relationship with her granddaughter is a liberty interest protected by the Due Process Clause of the

---

1. Section 16–1602(j) of the Idaho Code defines a "custodian" as "a person, other than a parent or legal guardian, to whom legal or joint legal custody of the child has been given by court order *or* who is acting in *loco parentis*." (emphasis added). Roe does not argue in her brief, however, that she acts in *loco parentis* and is therefore the

United States Constitution[2], and that the Department seeks to deprive her of that right. Roe contends that she has suffered a distinct and palpable injury that is traceable to the conduct of the Department, and that this injury satisfies the prerequisites for standing as set forth by this Court in *Miles v. Idaho Power Co.*, 116 Idaho 635, 778 P.2d 757 (1989). In *Miles*, this Court stated:

> The essence of the standing inquiry is whether the party seeking to invoke the court's jurisdiction has "alleged such a personal stake in the outcome of the controversy as to assure the concrete adversariness which sharpens the presentation upon which the court so depends for illumination of difficult constitutional questions."

*Miles*, 116 Idaho at 641, 778 P.2d at 763 (quoting *Duke Power Co.* v. *Carolina Env. Study Group*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595, 610 (1978)).

■ The *Miles* rule for standing is irrelevant in the instant case, however, because the magistrate court's denial of Roe's motion to intervene was not based on a determination that Roe had no "standing to intervene." In fact, the word "standing" appears nowhere in the magistrate court's order denying the motion.[3] Instead, the magistrate court ruled that intervention would be inappropriate because the language of the CPA and the ASFA did not contemplate a grandparent caregiver's participation as a party in the CPA proceedings. Since the magistrate court did not deny the motion to intervene for lack of standing, Roe's contention that the district court abused its discretion by ruling that she had no standing to intervene is meritless.

## 2. The magistrate court did not err in ruling that the CPA does not confer a conditional statutory right to intervene.

■ Roe argues that Section 16–1623(k) of the Idaho Code confers a conditional right to intervene in her granddaughter's CPA proceedings. That section states:

> At any time the department is considering a placement pursuant to this act, the department shall make a reasonable effort to place the child in the least disruptive environment to the child and in so doing may consider, without limitation, placement of the child with related persons.

I.C. § 16–1623(k). However, this argument is unpersuasive because I.C. § 16–1623(k) merely requires the Department to make "reasonable efforts" to place the child in the least disruptive environment possible, and that placing the child with related persons may be considered as a placement option. *See id.* The statute does not, as Roe suggests, provide for intervention by related persons who believe that placement in their home will cause the least disruption in the child's life.

A conditional statutory right to intervene, under the essentially identical Federal Rule of Civil Procedure, has been recognized only where the statute in question expressly states that the court may allow certain types of parties to intervene in the main action. *See* 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 24.12[1][2] (3d ed.1997); 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE AND

---

Child's custodian. It is undisputed that the Child is in the state's legal custody.

**2.** In a case recently decided by the United States Supreme Court, a Washington State statute was deemed overbroad, and thus unconstitutional, because its application "violated [the] due process right [of the parent] to make decisions concerning the care, custody, and control of her daughters". *See Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

**3.** The magistrate court did not address standing in its order presumably because permissive intervention is governed by the terms of I.R.C.P. 24,

and not by the common law rule for standing set forth in *Miles*. While courts have denied motions for permissive intervention for lack of standing, *see, e.g., Fouke Co. v. Mandel*, 386 F.Supp. 1341, 1353 (D.C.Md.1974); *Chinchurreta v. Evergreen Management, Inc.*, 117 Idaho 588, 590, 790 P.2d 369, 371 (Ct.App.1989), a finding of standing alone is not sufficient unless the requirements of I.R.C.P. 24(b) are also satisfied. Whether a party has standing is merely a factor courts may consider in exercising their discretion to grant permissive intervention once the requirements of Rule 24(b) are satisfied. *See Silver v. Babbitt*, 166 F.R.D. 418, 433 (D.Ariz. 1994).

PROCEDURE § 1910 (2d ed.1986). *See also McDaniel v. Jones,* 235 Kan. 93, 679 P.2d 682, 695 (Kan.1984) (permissive intervention by United States proper under conditional statutory right granted in 26 U.S.C. § 7424 (1976)). Since I.C. § 16–1623(k) does not state that a court may allow related persons to intervene, it is unlikely that the legislature intended I.C. § 16–1623 to provide a conditional right to intervene.[4]

Furthermore, the Department has authority to determine where the child will be placed in CPA proceedings. Section 16–1623(h) of the Idaho Code states:

> The department having been granted legal custody of a child, subject to the judicial review provisions of this subsection, shall have the *right* to determine *where and with whom the child shall live,* provided that the child shall not be placed outside the state without the court's consent. Provided however, that the court shall retain jurisdiction over the child, which jurisdiction shall be entered on any order or petition granting legal custody to the department, and the court shall have jurisdiction over all matters relating to the child. The department shall not place the child in the home from which the court ordered the child removed without first obtaining the approval of the court.

I.C. § 16–1623(h) (emphasis added). Since the Department has the express statutory right to determine where the child will live, it seems even less likely that the language of I.C. § 16–1623(k) was intended to confer a conditional right to intervene upon related caretakers who wish that the child be placed permanently with them. Section 16–1623(k) only requires that the Department make "reasonable efforts" to place the child in the least disruptive environment possible. Roe's assertion that her home would be the least disruptive placement for the Child does not transform the "reasonable efforts" mandate of I.C. § 16–1623(k) into a conditional statutory right to intervene. Since the CPA gives the Department the affirmative right to de-termine where the Child will live so long as the state has legal custody, we hold that the magistrate court was correct in ruling that Roe did not have a conditional statutory right to intervene based on I.C. § 16–1623(k).

Roe also argues that if she is not allowed to intervene, the issue of whether placement with John is the "least disruptive possible", in accordance with I.C. § 16–1623(k), will not be addressed in the Child's CPA proceedings. This argument is unpersuasive, since Roe is entitled under the ASFA and the Department's regulations to be heard in "any review or hearing with respect to the child...." *See* 42 U.S.C. 675(5) (G); *see also* IDAPA 16.06.01.424.03.-d.i (July 1, 1999). While this right to be heard in the proceedings does not entitle Roe to full participation as a party, she would presumably be allowed to express her concerns that placement with John Doe, who was identified as the Child's biological father only recently, will be disruptive.

Roe also contends that Idaho precedent gives preference to non-parent relative caregivers over the rights of biological parents who have had no significant relationship with the child, citing *Application of Altmiller,* 76 Idaho 521, 285 P.2d 1064 (1955); *Andrino v. Yates,* 12 Idaho 618, 87 P. 787 (1906). Neither of these cases is applicable here, however, since they both pre-date the adoption of the CPA, and deal with lawsuits over custody rather than placement of children who were removed from a parent's custody because of abuse or neglect. Additionally, the cases are irrelevant to the question of whether intervention was improperly denied in this case, but point instead to the issue of whether the best interests of the child would be best served by granting custody to one party or another. Since this appeal involves only the intervention issue, and since the substantive issues involved in CPA proceedings are different from those in custody litigation, *Andrino* and *Altmiller* are inapplicable in this case.

---

**4.** The ASFA states that a state's case review system must be "provided with notice of, and an opportunity to be heard in, any review or hearing with respect to the child." *See* 42 U.S.C. § 675(5)(G). Like the CPA, however, the ASFA does not include a provision that relative caregivers may intervene at the discretion of the court, which is the type of provision contemplated as a "conditional right to intervene" under Rule 24(b)(1).

**3. Roe's motion for permanent placement and the CPA proceedings did not have common issues of law or fact.**

Roe argues that her motion for permanent placement and the Department's CPA proceedings have common issues of law and fact. Roe also contends that the magistrate court failed to address the issue of whether Roe had a "claim or defense" that had a "common issue of law or fact" with the CPA proceedings. *See* I.R.C.P. 24(b) (2). Roe asserts that since neither the CPA nor the ASFA expressly bar permissive intervention and there are common issues of law or fact, the magistrate court's denial of her motion for intervention should be reversed.

Roe's arguments are unpersuasive. Idaho Juvenile Rule 29 states: "The Idaho Rules of Civil Procedure shall apply to CPA proceedings to the extent they are not inconsistent with these rules, statutes, or the law." A close examination of the CPA suggests that permissive intervention, at least where a related caregiver wishes to intervene in order to seek permanent placement of a child, is inconsistent with the narrow scope of a CPA proceeding.

The goal of a CPA proceeding is not to determine which of several claimants is entitled to obtain custody of the child. With respect to the goals of the CPA, the legislature provided:

The policy of the state of Idaho is hereby declared to be the establishment of a legal framework conducive to the judicial processing of child abuse, abandonment and neglect cases, and the protection of children whose life, health or welfare is endangered. At all times the health and safety of the child shall be the primary concern. Each child coming within the purview of this chapter shall receive, preferably in his own home, the care, guidance and control that will promote his welfare and the best interest of the state of Idaho, and if he is removed from the control of one (1) or more of his parents, guardian or other custodian, the state shall secure adequate care for him; provided, however, that the state of Idaho shall, to the fullest extent possible, seek to preserve, protect, enhance and reunite the family relationship. This chapter seeks to coordinate efforts by state and local public agencies, in cooperation with private agencies and organizations, citizens' groups, and concerned individuals, to:

(1) preserve the privacy and unity of the family whenever possible;

(2) take such actions as may be necessary and feasible to prevent the abuse, neglect or abandonment of children;

(3) clarify for the purposes of this act the rights and responsibilities of parents with joint legal or joint physical custody of children at risk.

I.C. 16–1601. The language of the statute indicates that the legislature expressly intended the CPA to protect children from parents, guardians or other custodians who posed a health and safety threat to their children, and to remove such children from unsafe family environments. *See id.* At the same time, however the legislature intended the CPA to reunite the children with their families once the hazards could be removed. *See id.*

In order to advance this policy, the legislature created a framework for processing child abuse and neglect cases. That framework provides that any person having evidence of abuse, abandonment or neglect of a child may request that a prosecuting attorney or a deputy attorney general file a petition invoking the jurisdiction of the court under the CPA. *See* I.C. § 16–1605(a) (2). The petition must include the name, sex and residence address of the child, as well as the facts which bring the child within the provisions of the CPA. *See* I.C. § 16–1605(b)(1)– (2). The petition must also include the names and residence addresses of both the mother and father, guardian or other custodian, as well as the names and addresses of each person having sole or joint legal custody of the child. *See* I.C. § 16–1605(b)(4)–(5).

Once a petition is filed, a summons is issued requiring the person or persons who have custody of the child to bring the child before the court for an adjudicatory hearing. *See* I.C. § 16–1606(a). The summons must also give notice to "each of the parents,

guardian or legal custodian" of both the time and place of the hearing as well as their right to retain and be represented by counsel. *See* I.C. § 16–1606(c). The court may also order the department to investigate the circumstances of the home in question and submit a social evaluation of the child and parents or other custodian. *See* I.C. § 16–1609.

If a preponderance of the evidence produced at the adjudicatory hearing indicates that the child comes within the purview of the CPA, the court shall issue a decree making findings of fact and conclusions of law upon which it exercises jurisdiction over the child. *See* I.C. § 16–1610(a). If the court concludes that the child falls under the purview of the CPA, the court may either place the child under protective supervision in his or her own home, or vest legal custody in the Department or another agency. *See* I.C. § 16–1610(b)(2).

If the court vests legal custody of the child in the Department, the Department must prepare a written case plan designed to make it possible for the child to return home, or to be placed for adoption or with a legal guardian. *See* I.C. § 16–1610(c). The Department shall have custody of the child for an indeterminate period not to exceed one year, but the court may renew the Department's custody after notice to the parties and a hearing if the court determines that renewal is necessary to safeguard the best interests of the child. *See id.* As observed above, once the Department is granted legal custody of the child, it "shall have the right to determine where and with whom the child shall live...." I.C. § 16–1623(h).

If Roe were allowed to intervene, her participation as a party would essentially transform the CPA action into a custody proceeding. A CPA action is not intended to provide a forum for multiple claimants to litigate their right to custody. Once the Department has legal custody of a child under the CPA, the Department and not the court has the authority to determine where the child should live. *See* I.C. § 16–1623(h). Even though the court retains jurisdiction over the child as long as state custody continues, *see* I.C. § 16–1623(h), the CPA provides the court only limited authority to review the Department's placement decisions. For example, the court has authority to grant or deny its consent to allow a placement outside the state, and to grant or deny its approval of returning the child to the home from which he or she was removed. *See id.* When a child has been in the Department's custody for one year, the court is also authorized to decide whether renewal of the Department's custody is necessary to safeguard the best interests of the child. *See* I.C. § 16–1610(c). The court will also review the Department's periodic reports concerning the child's progress. *See* I.C. § 16–1623(i).

■ The court's role in CPA actions is therefore much more limited than in custody cases, in which the court must determine which custody arrangement will advance the best interests of the child. *See Stockwell v. Stockwell,* 116 Idaho 297, 299-300, 775 P.2d 611, 613-14 (1989); *Annest v. Annest,* 96 Idaho 566, 568, 532 P.2d 571, 573 (1975); I.C. § 32–717. Therefore, Roe's claim for permanent placement is inconsistent with the limited scope of CPA proceedings.

■ Since allowing permissive intervention in CPA proceedings is inconsistent with the CPA and the statutes governing the termination of parental rights, we hold that I.R.C.P. 24(b)(2) is inconsistent with the CPA and therefore should not be applied in CPA actions. *See* I.J.R. 29. We thus affirm the magistrate court's decision to deny Roe's motion for intervention.

**B. It Is Unnecessary To Address The Additional Issues Presented By Roe In This Permissive Appeal.**

In addition to appealing the magistrate's order denying her motion for permissive appeal, Roe also requests that this Court address substantive issues which may arise upon remand, citing *Price v. Payette County Board of County Commissioners,* 131 Idaho 426, 958 P.2d 583 (1998).

Considering the substantive issues at this time is unnecessary, however, since a *judgment,* final or otherwise, has not yet been entered in the instant case. Roe essentially seeks to appeal several issues to this Court even before those issues have been raised in

a lower court. It is premature to address such issues under the circumstances of this case, where Roe's intervention was not allowed. Therefore, the Court will not address the additional issues raised by Roe in her appeal.

## V.

## CONCLUSION

We hold that the magistrate did not err in determining that the CPA does not provide a conditional statutory right to intervene. We therefore hold that the magistrate court did not abuse its discretion in denying Roe's motion for permissive intervention. Costs on appeal are awarded to respondents.

Chief Justice TROUT, Justices SCHROEDER, WALTERS and KIDWELL concur.