**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49614**

| | | |
|---|---|---|
| **In the Matter of: Jane Doe I, A Child Under Eighteen (18) Years of Age.** | ) ) | |
| **STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE,** | ) ) | **Filed: August 9, 2022** |
| | ) | |
| **Petitioner-Respondent,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **v.** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **JOHN DOE (2022-09),** | ) | **BE CITED AS AUTHORITY** |
| | ) | |
| **Respondent-Appellant.** | ) | |
| | ) | |

Appeal from the Magistrate Division of the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Victoria Olds, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

McFarland Law Offices, LLC; Joanna McFarland, Lewiston, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Floyd Swanton, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

John Doe (Father) appeals from the magistrate court's judgment terminating his parental rights to his minor child, L.L. Father argues the court erred by concluding that he neglected L.L. and that terminating Father's parental rights is in L.L.'s best interests. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

L.L. was born in May 2008 and has many intellectual and physical disabilities. L.L. is autistic, cognitively delayed, and legally blind. Among other things, she has ADHD; pica, a compulsive eating disorder causing her to eat nonedible items; Perthes disease in her hip; and echolalia, a communication disorder. L.L. requires supervision twenty-four hours a day with one-on-one care, and she will never be able to function independently.

1

Father and Jane Doe (Mother) are L.L.'s biological parents.[1] They divorced in 2014, and Mother was awarded sole legal custody of L.L. Mother has a long history with the Idaho Department of Health and Welfare related to L.L.'s care. Mother also has a long history of drug addiction and of attempts to treat her addiction. According to Mother's testimony, she has been addicted to methamphetamine "off and on for most of [her] life."

In November 2019, while L.L. was in Mother's custody, Mother relapsed and contacted the Department about having L.L. placed in a residential care facility. Thereafter, Mother left L.L. in the care of a person who was "under the influence of drugs," and Mother unexpectedly checked into a residential care facility for inpatient treatment. After the person caring for L.L. attempted to leave her at a residential care facility to which she had not been admitted, the Department filed a petition under the Child Protective Act (CPA), and on November 22, 2019, the magistrate court granted the Department temporary custody of L.L. By early December, the Department had located Father, who was in Washington and who had not been involved in L.L.'s care since 2013.

In January 2020, the magistrate court approved a case plan identifying tasks for Father to complete and reunification as the primary permanency goal. Among other tasks, the case plan required Father to seek legal custody of L.L. through legal action, to visit L.L. on a consistent basis, to demonstrate his ability to financially meet her care needs, to secure services and connect with community services specific to her needs, and to maintain consistent communication with the Department.

By August 2020, the Department had completed a home study of Father's residence in Washington and recommended an extended home visit for L.L. with Father and his wife. The magistrate court granted a request for an extended home visit with Father to begin in the Department's discretion and ordered Father to submit to a hair follicle test. In November 2020, Father's wife passed away, and Father still had not submitted to a hair follicle test. As a result, the extended home visit never occurred.

In January 2021, the magistrate court held a review hearing and changed the permanency goal from reunification to termination of parental rights. In February, the Department filed a petition to terminate the parents' parental rights, and the court scheduled a termination trial for

---

[1]     The magistrate court also terminated Mother's parental rights. The decision to terminate Mother's parental rights is not at issue in this appeal.

March. Mother moved to continue the trial, however, because she was receiving inpatient drug treatment in March. The court granted this motion, vacated the trial, and reset it for August. In August, however, the court continued the trial to allow the parties to mediate. After mediation failed, the court rescheduled the trial for January 2022.

At the two-day termination trial in January 2022, the magistrate court heard the testimony of Father, Mother, the director of L.L.'s residential care facility, the manager of L.L.'s former residential care facility, two Department social workers, a substance abuse counselor, L.L.'s maternal grandmother, and Mother's neighbor. During the trial, Father testified he could not take care of L.L.'s needs. After the trial, the court entered findings of fact and conclusions of law, concluding Father neglected L.L. by failing to provide her with proper parental care and control necessary for her well-being, to perform the case plan, and to comply with the court's order to submit to a hair follicle test. *See* Idaho Code §§ 16-1602(31)(a), 16-2002(3)(b). Further, the court concluded terminating Father's parental rights is in L.L.'s best interests.

Father timely appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

### III.
### ANALYSIS

**A.    Neglect**

Idaho Code Section 16-2002(3)(a) defines neglect as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a CPA case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

**1.    Neglect by failure to comply with case plan and court order**

Father challenges the magistrate court's conclusion that he neglected L.L. by failing to comply with the case plan. *See* I.C. § 16-2002(3)(b) (defining "neglected" to include failure to comply with court orders or case plan). The court concluded Father did not complete any tasks in the plan. In support, the court found that Father took no legal action to seek legal custody of L.L., had only visited L.L. once since May 2021, failed to demonstrate financial stability, failed to show he had secured services to support L.L.'s care at the time of the termination trial, failed to communicate consistently with the Department, and failed to pursue an extended home visit with L.L. after his wife passed away.

Contrary to these findings, Father argues he "completed his caseplan [sic] long before the termination trial." In support, he contends his communications with the Department were "good at first"; he "had regular unsupervised visitation" with L.L.; he "passed two separate home studies"; and he identified "[p]rograms in support of [L.L.'s] home-based needs." These arguments, however, relate to Father's earlier efforts to arrange for an extended home visit with L.L. and ignore Father's conduct after August 2020. At that time, the court ordered Father to submit to a hair follicle test before the extended home visit. Thereafter, Father failed to comply with that order and ceased communicating with the Department.[2]

Substantial and competent evidence supports the magistrate court's conclusion that Father failed to perform the case plan. For example, Father testified he had not taken independent legal action to obtain legal custody of L.L. Father also testified he had visited L.L. only once in the year before the termination trial and chose not to contact her by telephone or video calls because he believed those contacts would not be "relevant" to her. A Department caseworker testified Father failed to document his income or the community support he had identified for L.L.'s care. Further, that Father never submitted to a hair follicle test, as the court ordered, is undisputed.

On appeal, Father argues the COVID-19 pandemic and other events in his life made it impossible for him to submit to a hair follicle test and to comply with the case plan. Impossibility

---

[2]     Father suggests his failure to communicate with the Department was the caseworker's fault. For example, he argues that "when the caseworker changed, the second caseworker did not comply with the requirements and did not comply with their required task in the caseplan [sic]." The magistrate court found both that Father did not comply with the task of communicating with the Department and that the Department "did not comply with this task for a period of time also." Any failure by the Department to communicate with Father, however, does not excuse his failures to perform his case plan.

may be a defense for failing to comply with a case plan's requirements. *See Idaho Dep't of Health & Welfare v. Doe (2016-14)*, 161 Idaho 596, 600, 389 P.3d 141, 145 (2016) ("[I]mpossibility may be asserted as a defense to a claim of neglect founded upon failure to comply with the requirements of a case plan."). The impossibility defense is not available, however, if the parent bears responsibility for not complying with the case plan. *Id.*

In addition to the pandemic, Father identifies his inability to renew his driver's license, a surgery, his wife's death, depression, and the second caseworker's communication failures as reasons it was allegedly impossible for him to comply with his case plan and with the order to submit to a hair follicle test. Father, however, fails to articulate how these events precluded him from complying with either the court order or the case plan.[3] Furthermore, the magistrate court found "the reasons stated for not submitting to the test were not credible," including Father's lost identification, his lack of transportation, and his work. We decline to reweigh the court's credibility determinations. *See State, Dep't of Health & Welfare v. Doe (2019-27)*, 166 Idaho 197, 200, 457 P.3d 849, 852 (2020) (explaining appellate court will not make credibility determinations); *Doe*, 148 Idaho at 246, 220 P.3d at 1065 (explaining appellate court will not reweigh evidence). Contrary to Father's assertion, substantial and competent evidence supports the magistrate court's conclusion that his performance of his case plan and his ability to comply with the court order were not impossible and that he failed to comply with the case plan and court order.

---

[3] In support of his assertion that compliance with his case plan was impossible, Father identifies several of the magistrate court's statements, which he contends are erroneous. These challenged statements include that (1) one of the facilities at which L.L. resided offered a three-week training course for caretakers; (2) Father had custody of L.L. when she was three to five years old because Mother was incarcerated; and (3) Mother was angry at Father for getting custody of L.L. Father, however, fails to articulate how any of these purportedly inaccurate statements demonstrate that his performance of his case plan was impossible. Moreover, even assuming these statements are not entirely complete and accurate, none of them, individually or cumulatively, overcome the substantial and competent evidence supporting the court's conclusions.

6

## 2. Neglected by conduct or omission

Father also challenges the magistrate court's conclusion that he neglected L.L., as defined by I.C. § 16-1602(31)(a). In support of this conclusion, the court found, among other things, that Father had "not played a significant role in [L.L.'s] life for well over seven years"; failed "to provide appropriate care, attention and supervision"; and "abdicated his role as a parent." Father's testimony supports these findings. At the time of the termination trial, L.L. was thirteen years old, but Father had only provided care for her for approximately five years of her life. Further, Father acknowledged he was only "kind of" involved in L.L.'s life when this case began, visited her only once in the year before the termination trial, and refused to participate in telephone or video calls with her.

Father does not challenge the magistrate court's findings about his lack of involvement in L.L.'s life. Instead, Father contends he knows L.L.'s "medical diagnosis and needs" and "maintain[ed] her ongoing medical needs" when she was in his care. Further, he contends that he is able "to pronounce [L.L.'s] medical conditions," her "medical interventions," and "the ongoing expectations of her development." Father asserts that, in contrast to him, "care providers and case workers tasked with the needs of [L.L.] were unable to report her conditions or her treatment." Father fails to cite any evidence in support of this assertion. Rather, Father only notes that "there is no indication the supervisor who testified ever met the child"; "the case worker testified to seeing [L.L.] in person every other month and watching video visits weekly and [receiving] a monthly update"; and L.L.'s guardian ad litem did not testify at the termination trial. This information, however, does not support Father's suggestions that the Department caseworker and L.L.'s care providers are unaware of L.L.'s needs; L.L.'s care providers are not meeting her needs; or Father would be a better care provider for L.L. Contrary to Father's assertions, substantial and competent evidence supports the magistrate court's conclusion that Father neglected L.L.

## B. Inability to Discharge Parental Responsibilities

Father argues the magistrate court erred in concluding that he is unable to discharge his parental responsibilities. As the Department notes, however, the court did not conclude Father is unable to discharge his parental responsibilities under I.C. § 16-2005(1)(d) as a basis for terminating his parental rights. *See, e.g.*, *Choice Feed, Inc. v. Montierth*, 168 Idaho 124, 151, 481 P.3d 78, 105 (2021) (noting appellate courts "do not presume the lower court ruled on something when it is not addressed in its opinion" and decline to review issues where there is no adverse

ruling).  Rather, the court terminated Father's parental rights because he neglected L.L. under I.C. § 16-2005(1)(b), as defined by I.C. § 16-1602(31)(a) (providing neglected means parent's conduct or omission leaves child without proper parental care and control) and I.C. § 16-2002(3)(b) (providing neglected means failing to comply with case plan and orders).  Regardless, even if the court concluded Father's inability to discharge parental responsibilities was an independent statutory ground for terminating Father's parental rights, we do not address that basis because we affirm the magistrate court's judgment under I.C. § 16-1602(31)(a) and I.C. § 16-2002(3)(b).  *See Doe*, 143 Idaho at 345, 144 P.3d at 599 (providing "[e]ach statutory ground is an independent basis for termination").

**C.     Child's Best Interests**

Father also challenges the magistrate court's conclusion that terminating his parental rights is in L.L.'s best interests.  Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship.  *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991).  When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe (2013-15)*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014).  A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court concluded terminating Father's parental rights is in L.L.'s best interests because "Father will not provide for the child's physical, medical or developmental needs."  The court specifically noted Father's lack of financial contribution to L.L.'s care, her overall improvement while in the Department's care, and Father's failure to improve his own situation.  Further, Father testified at the termination trial that "I can't take care of [L.L.'s] needs."

Father does not dispute these facts.  Instead, Father argues that terminating his parental rights will make L.L. an orphan, which is "not the policy in Idaho" and that "the State is seeking

a guardianship," which does not require terminating his parental rights. The intent of the CPA is "to protect children from parents, guardians or other custodians who pose[] a health and safety threat to their children, and to remove such children from unsafe family environments." *Roe v. State, Dep't of Health & Welfare*, 134 Idaho 760, 766, 9 P.3d 1226, 1232 (2000). Idaho Code Section 16-1601 articulates the CPA's policy and states that "at all times the health and safety of the child shall be the primary concern," although "to the fullest extent possible" the State shall "seek to preserve, protect, enhance and reunite the family relationship." The magistrate court's termination of Father's parental rights comports with this policy. Substantial and competent evidence supports the court's findings that Father has not and cannot meet L.L.'s specific needs, despite the Department's efforts to reunite the relationship. Further, Father fails to cite any authority that the court is required to consider the Department's permanent placement of the child in determining whether terminating parental rights is in a child's best interest. *See, e.g.*, *Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018) (ruling appellate court will not consider issues not supported by cogent argument and authority); *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 263, 267, 270 P.3d 2048, 1052 (2012) (same).

## IV.

## CONCLUSION

Substantial and competent evidence supports the magistrate court's conclusion that Father neglected the child and that terminating Father's parental rights is in the child's best interests. Accordingly, we affirm the judgment terminating Father's parental rights.

Chief Judge LORELLO and Judge HUSKEY **CONCUR**.