46 P.3d 529

**In the Matter of Jane Doe and John Doe, Children Under the Age of Eighteen Years.**

**IDAHO DEPARTMENT OF HEALTH & WELFARE, Petitioner–Respondent,**

v.

**Robert W. HAYS, in his official capacity as Guardian Ad Litem of Jane Doe and John Doe, Respondent–Appellant,**

and

**Debra Loya and Carl Loya, Intervenors–Appellants.**

**No. 27151.**

Supreme Court of Idaho.
Boise, February 2002 Term.

May 3, 2002.

Givens Pursley, LLC, Boise, for appellant Robert W. Hays. Thomas E. Dvorak argued.

Law Offices of Jim C. Harris, P.L.L.C., Boise, for intervenors-appellants Carl and Debra Loya. Jim C. Harris appeared but did not argue.

Alan G. Lance, Attorney General; Mary Jo Beig, Deputy Attorney General, Boise, for respondent. Mary Jo Beig argued.

EISMANN, Justice.

The Guardian Ad Litem and foster parents appeal the order of the district court reversing an order entered by the magistrate in which the magistrate held that she had authority to choose the adoptive parents for two children who were wards of the Department of Health and Welfare. We affirm the order of the district court.

## I. FACTS AND PROCEDURAL BACKGROUND

On July 20, 1997, at about 12:30 a.m., sheriff's deputies removed five-year-old R.D. and four-year-old N.D. from their parents, whom they arrested for domestic battery. The two children had been living with their parents at a campground, and their parents were intoxicated and fighting with each other. A similar incident had occurred four years earlier. The deputy delivered the children into the custody of the Department of Health and Welfare, and on July 21, 1997, the Department instituted proceedings under the Child Protective Act (CPA), Idaho Code §§ 16–1601 *et seq.* The parents were each appointed an attorney, and Robert Hays (Guardian Ad Litem) was appointed guardian ad litem for the children. On November 10, 1997, based upon a stipulation of all parties, the magistrate judge granted the Department custody of the children for an indeterminate time not to exceed one year.

On October 16, 1998, the Department instituted proceedings to terminate the parent-child relationship between the two children and their parents. The termination proceedings were scheduled for an evidentiary hearing on February 5, 1999. On that date, the children's parents appeared in court and executed written consents to terminate their parental rights. The magistrate judge then entered an order terminating the parent-child relationship between the children and their parents, appointing the Department as guardian of the children's person, and vesting legal custody of the children in the Department. Carl and Debra Loya, the children's foster parents, wanted to adopt them, but the Guardian Ad Litem was concerned that the Department would not consent to that adoption. He therefore asked the magistrate judge to continue his appointment as guardian ad litem and to schedule a permanency planning hearing. The magistrate judge did so.

The Department located a couple in Nebraska who also wanted to adopt the children. The magistrate judge decided that she had the authority to determine who could adopt the children. After an evidentiary hearing, she found, using the factors listed in Idaho Code § 32–717 for determining child custody in divorce cases, that it would be in the children's best interests to have the Loyas adopt them. The factor that the magistrate found most significant was that the Loyas had shown that they were able to parent high needs children, while the couple

in Nebraska had never been parents. On March 22, 2000, the Department appealed the magistrate's decision. On April 11, 2000, the magistrate issued an order directing the foster parents to file a petition for adoption in Ada County, their county of residence, which the magistrate stated she would then consolidate with this case.

On April 17, 2000, the Loyas petitioned to intervene in this action because they would be affected by the appeal. The district court granted that motion on May 3, 2000. On November 28, 2000, the district court issued its decision on appeal reversing the decision of the magistrate. The district court also vacated the order granting the Loyas permission to intervene. Both the Guardian Ad Litem and the Loyas then appealed.

## II. ANALYSIS

■ The central issue in this appeal is whether the magistrate judge had the authority to determine who could adopt the children. That is an issue of law over which we exercise free review. *Albee v. Judy,* 136 Idaho 226, 31 P.3d 248 (2001). When reviewing a case decided in the magistrate division that has been appealed to the district court, we review the magistrate's decision independently of, but with due regard for, the district court's intermediate appellate decision. *Brinkmeyer v. Brinkmeyer,* 135 Idaho 596, 21 P.3d 918 (2001).

■ Upon terminating the parent-child relationship between each of these children and their parents, the magistrate had three options: (1) appoint an individual as guardian of the child's person; or (2) appoint an individual as guardian of the child's person and vest legal custody in another individual or in an authorized agency; or (3) appoint an authorized agency as guardian of the child's person and vest legal custody in such agency. IDAHO CODE § 16–2010 (2001). In this case, the magistrate judge selected the third option. She appointed the Department of Health and Welfare (Department) as guardian of the children's person and vested their legal custody in the Department. The rights of the Department as guardian of the children included "the authority to consent to the adoption of the child[ren] and to make

any other decision concerning the child[ren] which the child[ren]'s parents could make." IDAHO CODE § 16–2002(g)(4) (2001). The authority to consent to the adoption of a child necessarily includes the authority to decide who can be the adoptive parents.

The need to consent to an adoption only arises when adoption proceedings are pending with respect to the child. The prospective parents initiate the adoption proceedings by filing a petition seeking to adopt the child. IDAHO CODE § 16–1506(1) (2001). The prospective adoptive parents must give notice of the proceedings to any person or agency whose consent is statutorily required, IDAHO CODE § 16–1505(1) (2001), and such person or agency must execute a written consent to the adoption and file it with the court in which the adoption proceedings are pending, IDAHO CODE § 16–1506 (2001). The consent is required and given in connection with a specific, pending adoption proceeding in which the prospective parents request to adopt a specific child. Because a person or agency whose consent is required can either grant or withhold that consent, that person or agency has the authority to select the prospective adoptive parents. Although the court in the adoption proceedings must be satisfied that the interests of the child will be promoted by the adoption, IDAHO CODE § 16–1507 (2001), its authority is limited to granting or denying the petition.

Idaho Code § 16–1504 identifies who must consent to the adoption. The magistrate judge presiding over a CPA proceeding, or a termination of parental rights proceeding, involving the adoptee is not listed as one of the persons whose consent is required. In this case, the Department, as the guardian of children whose parents' parental rights have been terminated, is the only entity whose consent is required. IDAHO CODE § 16–1504 (2001). Thus, because the authority to give or withhold consent to an adoption necessarily includes the authority to select the adoptive parents, the Department has the sole authority to select who should adopt the children. This authority, of course, is subject to the authority of the court in which adoption proceedings are filed to deny the adoption if it is not in the children's best interests.

■ The appellants argue that subsection (c) of Idaho Code § 16–2010 granted the magistrate judge the authority to decide who should adopt these children. That subsection provides as follows:

> If termination of parental rights is granted and the child is placed in the guardianship or legal custody of the department of health and welfare the court, upon petition, shall conduct a hearing as to the future status of the child within twelve (12) months of the order of termination of parental rights, and every twelve (12) months subsequently until the child is adopted or is in a placement sanctioned by the court.

The appellants argue that the court's authority to conduct a hearing "as to the future status of the child" includes the authority to decide who should adopt the children in this case.

The phrase "sanctioned by the court" modifies "placement," not "adopted." The judge who presided over the proceedings to terminate the parental rights of the child's parents is not thereby granted the authority to "sanction" the adoption of the child. The judge is only granted the authority to sanction a permanent placement other than adoption.

The purpose behind this statute is to provide a procedure that will expedite the permanent placement of a child whose parents have had their parental rights terminated. Once a child is in a permanent living arrangement, there is no need for further hearings under subsection (c). Until a child is in a permanent living arrangement, however, the court is to conduct annual hearings as to the child's future status, primarily to ensure that the Department is making reasonable efforts to place the child in a permanent living arrangement. Because of the child's age, special needs, or other reasons, the Department may not be able to find adoptive parents for the child, or the Department may decide that some other permanent living arrangement is in the child's best interests. If the child is not adopted, then the annual hearings under subsection (c) must continue until the child is placed in a permanent living arrangement that is approved by the court. There is nothing in subsection (c), however, that purports to modify the Department's

sole authority to consent to the adoption of children who have been placed in the guardianship of the Department after the termination of the parental rights of the children's parents. Therefore, subsection (c) did not grant the magistrate judge the authority to select the adoptive parents.

■ The appellants next argue that the Department is estopped from challenging the magistrate's action in attempting to select the adoptive parents for the children because it did not appeal the decision of a permanency planning hearing officer. On December 22, 1998, a hearing officer appointed by the Department conducted a permanency hearing regarding the children. In her written report, the hearing officer concluded that she "would agree to the adoption of [the children] by Carl and Debe Loya." The appellants argue that because the Department did not appeal the hearing officer's conclusion that the foster parents should adopt the children, it is estopped from challenging the magistrate's determination that she could choose the adoptive parents.

It is clear from federal and state law that the scope of a permanency hearing does not include selecting the adoptive parents. Permanency hearings for children in foster care are required as a result of the Adoption and Safe Families Act of 1997 (ASFA), Pub.L. No. 105–89. By adopting ASFA, Congress intended, among other things, to minimize delay in juvenile dependency proceedings, to reduce the length of time that dependent children stay in a temporary placement, and to increase the number of adoptions. Prior federal law had required States to make "reasonable efforts" to prevent removing children from their homes and to facilitate returning children to their homes if removal was necessary. The intent of that policy was to take all reasonable steps to enable the parents to continue to fulfill their childrearing obligation. Although ASFA does not abandon the reasonable efforts criteria, it provides financial incentives for states to implement procedures designed to expedite the permanent placement of children who are in foster care.

Under ASFA, the child's health and safety is the paramount concern. 42 U.S.C.

§ 671(a)(15). The Act conditions federal funding upon a state's adoption of a system in which, among other things, the status of each child in foster care is reviewed periodically but no less frequently than once every six months, 42 U.S.C. § 675(5)(B); a permanency hearing is held no later than twelve months after the child is considered to have entered foster care, 42 U.S.C. § 675(5)(C); reasonable efforts to keep the child in, or return the child to, the home are not required in defined aggravated circumstances, 42 U.S.C. § 671(15)(C); and under specific circumstances the state is required to seek termination of the parental rights of the child's parents "and, concurrently, to identify, recruit, process, and approve a qualified family for adoption," 42 U.S.C. § 675(5)(E).

The permanency hearing required by 42 U.S.C. § 675(5)(C)[1] is succinctly defined in 45 CFR § 1355.20 as follows:

Permanency hearing means:

(1) The hearing required by section 475(5)(C) of the Act to determine the permanency plan for a child in foster care. Within this context, the court (including a Tribal court) or administrative body determines whether and, if applicable, when the child will be:

(i) Returned to the parent;

(ii) Placed for adoption, with the State filing a petition for termination of parental rights;

(iii) Referred for legal guardianship;

(iv) Placed permanently with a fit and willing relative; or

(v) Placed in another planned permanent living arrangement, but only in cases where the State agency has documented to the State court a compelling reason for determining that it would not be in the best interests of the child to follow one of the four specified options above.

In response to the federal mandate, the Idaho legislature amended the Child Protective Act to conform to the requirements of ASFA. Ch. 257, 1998 Idaho Sess. Laws 850. The legislation included an amendment to Idaho Code § 16–1610(c) to add the following underlined wording:

Upon such renewal [of a decree vesting legal custody of a child in the Department], the court shall expressly include in its order determination of the permanency plan for the child that includes whether, and if applicable when, the child will be returned to the parent, placed for adoption and the state will file a petition for termination of parental rights, or referred for legal guardianship or, in cases where compelling reasons exist that it would not be in the best interest of the child to terminate parental rights, placed in another permanent living arrangement.

Ch. 257, § 3, 1998 Idaho Sess. Laws 850, 854. The Department also adopted regulations regarding permanency planning. The relevant

---

1. 42 U.S.C. § 675(5)(C) provides:

(5) The term "case review system" means a procedure for assuring that—

. . . .

(C) with respect to each such child, procedural safeguards will be applied, among other things, to assure each child in foster care under the supervision of the State of a permanency hearing to be held, in a family or juvenile court or another court (including a tribal court) of competent jurisdiction, or by an administrative body appointed or approved by the court, no later than 12 months after the date the child is considered to have entered foster care (as determined under subparagraph (F)) (and not less frequently than every 12 months thereafter during the continuation of foster care), which hearing shall determine the permanency plan for the child that includes whether, and if applicable when, the child will be returned to the parent, placed for adoption and the State will file a petition for termination of parental rights, or referred for legal guardianship, or (in cases where the State agency has documented to the State court a compelling reason for determining that it would not be in the best interests of the child to return home, be referred for termination of parental rights, or be placed for adoption, with a fit and willing relative, or with a legal guardian) placed in another planned permanent living arrangement and, in the case of a child described in subparagraph (A)(ii), whether the out-of-State placement continues to be appropriate and in the best interests of the child, and, in the case of a child who has attained age 16, the services needed to assist the child to make the transition from foster care to independent living; and procedural safeguards shall also be applied with respect to parental rights pertaining to the removal of the child from the home of his parents, to a change in the child's placement, and to any determination affecting visitation privileges of parents;

portion of the regulations in effect at the time of the permanency hearing in this case provided that the permanency planning disposition must include, at a minimum, determination of:

> The permanency plan for the child that includes whether, and if applicable when, the child will be returned to their parents, the state will file a petition for termination of parental rights and place the child for adoption, or referred for legal guardianship or, in cases where compelling reasons exist that it would not be in the best interest of the child to terminate parental rights, placed in another permanent living arrangement.

IDAPA 16.06.01.424.03(D)(ii)(2).

The purpose of permanency planning under both the federal and state statutes and regulations is to determine which avenue to pursue in order to provide the child with a safe, permanent living arrangement. Obviously, the ideal alternative is to preserve and reunify the family and to return the child to his own, safe home. That option is not always a viable alternative, however. In those cases, a permanent living arrangement for the child must be some other alternative, such as adoption, appointing a qualified guardian for the child, or placing the child with a fit and willing relative. The authority to select adoption as the appropriate permanent outcome for a child in foster care does not, however, include the right to select the adoptive parents for that child. There is nothing in the legislature's amendment to Idaho Code § 16–1610(c) that indicates the legislature also intended to amend Idaho Code §§ 16–1504 (specifying who must consent to an adoption) and 16–2002(g)(4) (providing that the guardian of a minor has authority to consent to an adoption if the minor's parents have died or have had their parental rights terminated). Thus, the hearing officer who conducted the permanency hearing had no authority to specify who would adopt the children. Her statement that she "would agree to the adoption of [the children] by Carl and Debe

Loya" was at most a recommendation.[2] The failure of the Department to appeal the hearing officer's nonbinding recommendation cannot support a claim of estoppel.

■ The appellants also argue that the Department is judicially estopped by its conduct in relation to a motion made by the Guardian Ad Litem at the conclusion of the termination hearing. On February 5, 1999, the children's parents had appeared before the magistrate and consented to the termination of their parental rights. Once they had done so, the Guardian Ad Litem asked the magistrate to retain jurisdiction to conduct a permanency placement hearing regarding the children within ninety days. The magistrate asked if anyone wanted to be heard on the motion, and the county prosecuting attorney, who represented the Department in the termination proceedings, did not voice any objection. The magistrate then scheduled a permanency hearing for May 7, 1999. The county prosecuting attorney later prepared for the magistrate's signature findings of fact, conclusions of law, and a decree terminating the parental rights of the children's parents. Appended to that decree was an order setting the time and date of the permanency hearing in accordance with the magistrate's oral granting of the Guardian Ad Litem's motion.

■ The appellants argue that by failing to object to the Guardian Ad Litem's motion, and by preparing the written order memorializing the magistrate's oral order, the Department is judicially estopped from challenging the magistrate's action in selecting the adoptive parents for the children. The Guardian Ad Litem's motion on February 5, 1999, did not ask the magistrate to rule that she had the authority to select the adoptive parents for the children. In fact, the magistrate judge did not decide that issue until she issued her memorandum decision on February 29, 2000, after the parties had briefed the issue. The Guardian Ad Litem argues that its motion clearly contemplated that the trial

---

**2.** The magistrate correctly concluded, "[T]he Independent Hearing Officer lacked authority to name a specific family for adoption." The magistrate also stated, "[T]he language used by the Hearing Officer indicates she recognized her limits and could only recommend the adoption by the Loyas."

court would choose the adoptive family. Even so, judicial estoppel requires that the party against whom it is asserted gain an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. *McKay v. Owens,* 130 Idaho 148, 937 P.2d 1222 (1997). The Department's actions in failing to object to the motion asking the magistrate to conduct a permanency placement hearing and in preparing the written order memorializing the magistrate's oral order setting such hearing do not constitute taking a position that the magistrate was entitled to select the adoptive parents for the children. There is no factual basis for applying judicial estoppel in this case.

■ The appellants also argue that the magistrate had authority to select the adoptive parents for the children because she, in effect, reserved that authority to herself in her decree terminating the parental rights of the children's parents. As stated above, upon terminating the parent-child relationship between each of these children and the child's parents, the magistrate had three options: (1) appoint an individual as guardian of the child's person; or (2) appoint an individual as guardian of the child's person and vest legal custody in another individual or in an authorized agency; or (3) appoint an authorized agency as guardian of the child's person and vest legal custody in such agency. IDAHO CODE § 16–2010 (2001). Selecting the adoptive parents of the children is not one of the options provided in Idaho Code § 16–2010. The magistrate could not obtain the lawful authority to select the adoptive parents by attempting to usurp that authority which belongs by law to the Department.

■ Finally, the Loyas contend that the district judge erred in revoking their status as intervenors in this action. The Loyas sought to intervene in order to assert their right to adopt the children. Citing Rule 7.1 of the Idaho Appellate Rules, they argue that once they were granted the right to intervene, the district court had no authority to revoke that order. Because the magistrate had no authority to select the adoptive parents for the children, and the Loyas have no right to adopt the children, the Loyas had no right to intervene in this action. *Roe v. State Dept. of Health and Welfare,* 134 Idaho 760, 9 P.3d 1226 (2000) (where legal custody of the child was placed in the Department under the CPA and under the CPA the Department has the right to determine where the child will live while in state custody, the child's grandmother, with whom the Department had placed the child during the CPA proceedings, had no right to intervene in the CPA action in order to assert her claim that the child should be placed permanently with her). The district court did not err in revoking their status as intervenors.

## III. SUMMARY

We hold that the magistrate had no authority to select the adoptive parents of the children, and that the district court did not err in revoking the intervenor status of the Loyas. The decision of the magistrate is reversed, and this case is remanded for further proceedings consistent with this opinion. Costs on appeal are awarded to the Department.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS, and KIDWELL CONCUR.